THE SAVANNAH AND OGEECHEE CANAL COMPANY, plaintiff in error, *vs.* BENEDICT BOURQUIN, defendant in error.

[McCAY, J., was providentially prevented from presiding in this case.]

1.  On the trial of an action brought by the owner of rice lands against a canal company, for overflowing his lands, by water escaping from the canal on account of the "sides and banks thereof being and continuing in bad and ruinous condition, for want of needful and necessary repairing and mending the same," the court charged the jury: 1st. That the defendant is responsible for damages caused by the bottom of the canal getting foul or filling up so as to cause the water to rise higher in the canal and to flow through a swamp or reservoir of the defendant's so that plaintiff's drains could not, under the ordinary flow, vent it.    2d. That if the jury found that any damages has resulted to the plaintiff by reason of the omission or commission of any act on the part of the defendant to keep its canal in proper order, the plaintiff is entitled to recover :

*Held,* that there is no evidence in the record as to the bottom of the canal being foul or filled up to authorize the first point in the charge, and the second is too broad and general for the pleadings.

2.  The fact that a canal company has used for upwards of twenty years a break or opening in the bank of the canal where it runs through a

swamp or pond, for the purpose of supplying the canal with water from the swamp as a reserve, and that there has also been during that period, at certain times, an outflow of water from the canal through the break, does not constitute such a prescriptive right in the company as to entitle it to increase intentionally, or by negligence, such outflow, so that it will cause the water to escape from the swamp, and submerge the land of an adjacent proprietor.

3. Damages for a continuing trespass, such as those arising from over-flowing one's land, can only be recovered to the time of commencing suit therefor. Subsequent damages for a continuance of the trespass give a new right of action.

4. The plaintiff in this case was not entitled to have included in the verdict, as part of his damages, the outlay he made for the purpose of planting and cultivating land which he knew was then overflowed.

Charge of Court. Prescription. Trespass. Damages. Before Judge SCHLEY. Chatham Superior Court. January Term, 1872.

Benedict Bourquin brought case against the Savannah and Ogeechee Canal Company, claiming $20,000 00 damages, upon the following statement of facts :

He had been for many years the owner, and in the actual possession, of a plantation in the county of Chatham, through which is constructed the Savannah and Ogeechee Canal. Before and during the war, he had planted rice on about seventy-five acres of the land. His planting operations were suspended after the capture of Savannah, until 1868. In the spring of that year he resumed his planting, or attempted to do so, hiring hands, building houses, buying mules, utensils and implements, expending therein about $3,500 00. He found, however, upon entering more fully on his work that owing to certain leaks and breaks in the canal bank, and on account of a want of repair of said canal, the water from the same overflowed his fields and prevented him from preparing his land for cultivation, and compelled him to give up the hope of making a crop. He, however, called the attention of the president of the canal company to the overflow, and requested that it be put in repair and the overflow stopped. His demands were unheeded, and, although he had repaired

his own dams, and the dams that at all times before and during the war had served to keep back the waters of the canal, and had used all the precautions that heretofore had been sufficient to protect him, he was unable to prevent the overflow, and finding it impossible to plant his land, and his repeated applications for relief to the company being unheeded, he brought his action for damages. The defendant pleaded not guilty.

The evidence was, substantially, as follows :

Gugie Bourquin sworn, says: His father had been in possession of the lands for forty years before suit brought. The principal crop planted on the place was rice. In 1868 his father prepared to plant these lands, buying mules, farming utensils, building houses, etc. Nothing planted on account of the water running from the canal. Reported the condition of the land and the water to Mr. Blair, the president of defendant. He gave him no satisfaction. Several culverts on the canal. One mile above the plantation of plaintiff is the eight mile lock. On this level the water is six feet higher than on the adjoining level. It overflows at the lock and runs through the swamp and a culvert under the canal, on to the rice field. Bought three mules at $150 00 each; cost of feeding them was about $15 00 or $20 00 per month; hire of hands to take care of them $20 00 per month and rations. Had eleven hands at work that season at thirty-five cents a day and rations; made arrangements with other hands, but as they did no work, paid them nothing. The plantation could not have been covered with tide-water. The value of the place not overflowed would be about $10,000 00. Would give $5,000 00 himself. Seventy-five acres of rice land under bank. Such land rents for about $10 00 an acre per annum. Of the three mules bought, plaintiff has two now. One was sold for $100 00 or $150 00. The other two have been used in ploughing and working the place. Two or three of the negroes remained during the season; the rest went away. Some of them were paid, but cannot say how many. Those who remained planted corn and several acres of rice on the high land, and also planted

some low land. Witness superintended the management of the place for his father for no pay. Mr. Blair's attention was called to the condition of the water in the latter part of February. Then a part of one square had been burnt off. Witness said he had stopped the break in the check dam three times. It was through this dam that the water came into the rice fields. This was the first attempt to plant rice since the war. The place had been planted up to the time of the surrender. About six or seven hands were on the place at the time of the first break. The ditches had not been. cleaned out. Would have given $5,000 00 for the place. Thinks he paid out for hands, implements, mules and horses, about $3,-500 00. There had been very heavy rains. Would have cost about $150 00 to repair the check dam, so as to keep the water out. In 1867 he repaired a break in check dam. This dam was to keep the back-water from the canal. The swamp would have a great deal of water after heavy rains. The breaks in the check dam and in the canal have been there a very long time; cannot say how long. The canal at Raspberry swamp had a break of thirty feet in length. It was leaking badly below eight mile lock. Through the break at Raspberry swamp the water of the canal was running and overflowing the low country between Rapsberry swamp and the back-water. Told Mr. Blair he desired to hold a survey of water, and he refused to appoint any one on the part of the defendant. In 1868 was unable to ditch the land in consequence of the water in the field, caused by the flow of water from the leaks and breaks in the canal bank. The back-water dam was mended three times during 1868. Never knew the water from Raspberry swamp to interfere with planting until after the war.

Samuel B. Sweat, sworn, says: Was engineer and surveyor; the water that runs through the break at Raspberry swamp flowed into the back-water; the bank has been open a very long time; some years ago the canal was in disuse; a good head of water is kept on now; saw a leak once about a mile and a half beyond what is known as "Bourquin's bridge;"

The Savannah and Ogeechee Canal Company *vs.* Bourquin.

very little water passed through, as a bank had been fixed around this break outside of the canal bank ; Raspberry swamp is a basin, and the canal runs through the centre ; its waters would naturally flow into the canal, but if the water in the canal should be raised, the swamp water would be backed and some of it flow through Mr. Bourquin's rice field ; thinks the water in the canal has been raised about eighteen inches since the war ; the opening in the canal at Raspberry swamp has been there at least thirty years to witness' own knowledge ; seems to have been left open to flow Raspberry swamp ; has no recollection of the check dam mentioned by Mr. Bourquin, and laid down in the drawing ; if the opening in the canal bank were closed up, there would be no way for the water to escape, except by evaporation.

### FOR THE DEFENSE.

..... Dotson, sworn, says : Raspberry swamp has always been kept as a reserve, same as Little Ogeechee river ; the natural course of the water from Raspberry swamp is towards Owens' in the direction of the Ogeechee river ; have seen the rice fields in question for the last fifty years ; the main ditches have not been cleaned in many years ; no water can pass or flow through them as they now are ; they were in the same condition in 1868 ; water gets in and out of the backwater, from the ditches on the other side of the canal, from the rice field, which ditches carry the water off to some ponds ; these ditches have not been cleaned out ; they are choked up ; if they had been clean the land would not have been overflowed ; Mr. Bourquin's land is nothing but a pond ; if the canals to drain the water from the fields had been cleaned out, the land would have been dry enough to plant corn ; the overflow of the rice fields was not caused by the canal ; it was occasioned by the bad condition of the dams and ditches owned by Mr. Bourquin, and on the Dean Forest place, adjoining and below Bourquin's fields ; have been on Bourquin's place every year for forty years ; was in his rice fields in 1868 ; if Bourquin planted rice in 1864, he must have made a very

small crop; have passed through the swamp on his horse, but do not remember the exact time.

G. T. Burdett, sworn, says: Knows location; the water passed over his lands before reaching Bourquin's; Raspberry swamp is a reserve and feeder to the canal; the water in it is as high as the top-water in the canal; does not think there was much water on Bourquin's land in 1868 which came from Raspberry swamp, because I used a path through the low land all the time; the back-water is a pond; all the swamps around drain into it, and if the ditches which carry the water off had been in good condition there would have been no overflow; if there was no canal there would be more water in Raspberry swamp, as the canal takes a great deal of water from it; has passed the break at the check dam lately; very little water was running through it at the time; could have taken more out with a pitcher; the rice fields and ditches have been growing up since 1845; if the ditches had been in repair the water could and would have run off the land; the ditches have been getting worse ever since he can remember; the land could be planted in corn if the ditches in the fields and at Dean Forest were clean; land in that neighborhood is worth about $4 00 or $5 00 per acre; in 1868 the canal was in good order.

Abraham Sheftall sworn, says: Canal in perfect order now, and was also in 1868. Travel the canal two or three times a week; have been employed for fifteen or twenty years to keep and regulate the water in the canal; the water is always under control; it is kept by a level, and was not raised in 1868, nor has it been since he has been in charge of it; has been on the canal for twenty-five years. Bourquin planted rice with the opening in Raspberry swamp just as it is now; the water was held on Bourquin's land by reason of the bad condition of his ditches in his rice field, and that lead to and from the back-water and his dams. The water from Raspberry swamp runs through Mr. Owens' place, and passes out in that way. If the back-water dam had been in good order, the water could not have flowed the land; $5 00 per acre would have

been the market value of the land in 1868, and $6 00 now. The water in the canal keeps to one standard, and has been so for years, before, during, and after the war.

Francis P. Blair sworn, says: Was president of canal company in 1868; canal then in good order; great many hands employed in that year, and much money expended to keep sides and banks in good order; great deal of rain fell in 1868, hardest rains known for forty years; opening at Raspberry swamp always been there, kept as reserve—been so for over twenty years to his knowledge; has marks on the canal so as to keep the water at the same level. The water has not been raised since the war; we could not raise it a foot if we wanted to. Water is kept at one level by letting it run into the Savannah river when too high.

Tax digests of Chatham county put in evidence, and showed returns of Bourquin of his lands in Chatham county, as follows: In 1867, five hundred and eighty acres, value $2,000 00; in 1870, six hundred acres, value $2,000 00.

The jury found for the plaintiff $2,500 00. The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in refusing to charge as follows: "If the jury find that the defendant is guilty of an infraction of the public duty imposed upon it by law, in not keeping its banks and sides in the condition required by its charter, and that the plaintiff suffered special damages thereby, and you further find that the plaintiff, by ordinary care, such as by keeping his dams in repair and his drains clear and fit for use, could have avoided the consequences to himself, caused by the defendant's negligence, he is not entitled to recover," and in giving the charge with this qualification: "If in the ordinary tillage or proper administration of his rice fields, the plaintiff failed to keep his drains open, so that all ordinary flow of water from this swamp or reserve could be discharged from his fields without injury, then he cannot recover damages for the neglect of the reasonable duty imposed upon him, as plaintiff is bound to use such diligence and care as an ordinary and prudent man would exercise in carrying

on his planting interests; but if you find from the testimony that the volume of water has been increased in height or quantity by the neglect of defendant in not keeping the canal in proper order, and by reason thereof such an increased overflow takes place, that plaintiff's drains, when kept in proper order, would not vent it, then the defendant would be liable to such damages as he has proved he suffered."

2d. Because the court erred in refusing to charge in the following language: "If you find that the plaintiff was damaged by the negligence of the defendant to keep its banks and sides in repair as required by its charter, and that the plaintiff could not by ordinary care have avoided the consequences to himself, then the proper measure of damages would be the difference in the market value of his property before the injury, and its market value after the injury," but added thereto, "or a fair rental per annum from the date of the overflow until the time of trial, and the outlay by plaintiff."

3d. Because the court erred in refusing to charge as follows: "That if the jury find that Raspberry swamp was left open for more than twenty years as a reserve for the canal, it was not the duty of defendant to build the bank there in 1868," but modified the charge by adding thereto the following: "unless such changes have been produced in the canal by the neglect of the defendant to keep it in the same condition it was when originally built."

4th. Because the court erred in refusing to charge in the following language: "If the jury find that Raspberry swamp was left open for more than twenty years, and should further find that the damages were occasioned by the increased quantity of water in the canal which escaped through the opening, the plaintiff cannot recover in this case which is for a failure to amend and repair its sides and banks; to entitle him to recover in such case, that act of trespass should be set forth in the declaration," but charged as follows: "If you find that at the time the canal was constructed (and that it was more than twenty years since,) that Raspberry swamp (as a reserve or feeder) was made and has been kept in the same or as good con-

dition now as then, then the plaintiff is not entitled to recover any damage that flows from the reserve or swamp, unless the testimony discloses that by the neglect of the defendant the canal became foul and in a worse condition, and by reason thereof caused a backing up of the water, raising the water line so much higher, as to cause more water to flow out of the swamp or reserve than did when the canal was kept in proper order, then for such failure or neglect the defendant would be responsible for such damages as plaintiff has sustained by reason thereof. As to the distinction made by counsel that because the declaration says failure to amend sides and banks, the court charges "that if the bottom should be allowed to get foul or fill up so as to cause the water to rise higher in the canal, and were water to flow through the swamp or reserve so that the plaintiff's drain could not, under the ordinary flow vent it, then for such neglect of defendant to keep the canal in proper condition, it would be responsible for the damage caused, as the bottom is as much a part of the canal as the sides."

5th. Because the court erred in this : plaintiff's counsel requested the court to charge, "If the jury find that the plaintiff could not repair his ditches by reason of this overflow, he is entitled to damages;" and the court said, "So I charge, provided his drains were kept in proper order and would vent the flow."

6th. Because the court erred in charging, as requested by plaintiff's counsel, in the following language : "That if the jury find that there was a greater flow of water at the time of the injury complained of and since, then the right to have a less amount of water pass through this break is no justification," and adding thereto, "that they must find that there was an excess of water caused by the canal not being kept in proper order and raising the water higher."

7th. Because the court erred in charging the jury, "that if they found from the testimony that any damage has resulted to the plaintiff by reason of the omission or commission of any act on the part of the defendant necessary to keep its

canal in proper order, then the plaintiff is entitled to recover."

8th. Because the verdict was contrary to law and the evidence.

The motion was overruled, and defendant excepted upon each of the aforesaid grounds.

HARTRIDGE & CHISOLM, for plaintiff in error.

J. R. SAUSSY; JOHN O. FERRILL, for defendant.

TRIPPE, Judge.

1. We do not propose to take up *seriatim* the various grounds in the motion for a new trial, but to give such directions as to the main questions involved that the case may, on a new trial, be relieved from any errors of a material character which may have been committed. The action was for damages caused by the defendant's keeping the sides and banks of the canal in a bad and ruinous condition, for want of necessary mending and repairing of the same. There was no evidence, so far as the record discloses, that the bottom of the canal had become foul or filled up. The charge of the court, therefore, on that point, and as to the damages resulting from that cause, was without evidence to authorize it. The other charge, that if the jury found that any damages had resulted to plaintiff by reason of the commission or omission of any act of the defendant to keep its canal in proper order, the plaintiff is entitled to recover, is too broad and general for the pleadings. Indeed, it would be difficult to prepare the pleadings so that they would authorize such a sweeping charge against any kind of negligence: 1 Chitty's Pl., 381, 392.

2. It was claimed, in behalf of the canal, that as it had an opening in its side in Raspberry swamp for supplying the canal with water from the swamp, as a reserve, and that it had been so used for more than twenty years, and that during that period there had been at certain times or whenever the water was up in the canal, an outflow of water through the opening into the swamp, and from it over the adjoining

lands, that a prescriptive right to such outflow had been acquired, or, in other words, it had an easement by prescription in the adjacent lands, so that it had the legal right to overflow them.    Granting the legal principle involved in this proposition, still it would confer no right on the defendant to increase such outflow either intentionally or by negligence, so that it would cause the water to escape from the swamp in such quantity that it would submerge the land of an adjacent proprietor which had not been theretofore overflowed.    If one acquires, by prescription or grant, the right to divert a stream so that it covers an acre of his neighbor's land, he does not thereby get authority to connect another stream with that, and cover two acres, or by thus increasing the water in the new channel to cause the overflow of the land of another neighbor.    The right gained is limited to the extent to which it has been used.    One may have the privilege of letting the water run off a building of fifty feet in length on another's lot, but he cannot claim from that the right to extend his building to one hundred feet, and thus double an easement in his neighbor's property.    Because he has had the.*coat* long enough to give him title to it he cannot, therefore, by law, *demand* the *cloak* also.    This rule is thus stated in Gale & Whatley, on Easements, page 330 : " As every easement is a restriction upon the right of property of the owner of the servient tenement, no alteration can be made in the mode of enjoyment by the owner of the dominant tenement, the effect of which will be to increase such restriction.    Supposing no express grant to exist, the right must be limited by the amount of enjoyment proved to have been had."

3. As to the measure of damages in cases of a continuing trespass, such as overflowing one's land, the authorities are almost uniform that it is limited to those which have occurred before action is commenced, and that subsequent damages flowing from a continuance of the trespass give a new right of action : Robinson *vs.* Bland, 2 Burr, 1077, 1086 ; Duncan *vs.* Markley, Harper's Reports, 276 ; Blount *vs.* McCormick, 3 Denio, 283 ; Pierce *vs.* Woodward, 6 Pick., 206 ; 3 Black-

stone's Commentaries, 220; and 2 Espinasse, N. P., page 269, where it is stated that it is not necessary to the justice of the case to include subsequent damages, because the plaintiff may bring his action *toties quoties*, he may sustain an injury : See, also, Langford *vs.* Owsley, 2 Bibb, 215 ; Wilcox *vs.* Plummer, 4 Peters, 172–182 ; 3 Comyn's Digest, 343. The case of Duncan *vs.* Markley, *supra*, is identical with this case in principle, as that was for damages to one man's mill caused by the dam erected by another for his mill. Loss or damage accruing subsequent to the suit may be recovered where they are the mere incident or accessory of the principal thing demanded, and another action could not be maintained for them, or, as Lord Mansfield expresses it, 2 Burr, *supra*, "where no satisfaction can be had for them by a new suit." And in trespass for breaking plaintiff's leg it was held proper to show the probable future condition of the limb: 23 Wendell, 425. In such cases as this latter and similar ones, there is no question but that all the consequences of a single act of trespass which constitutes damage, may be proved.

The court, then, we think, was in error when it charged the jury that plaintiff "might recover a fair rental per annum from the date of the overflow until the time of trial." Loss or damage accruing after the action was brought could not be recovered in this suit.

4. The court also charged that the plaintiff could recover for the "outlay" by him. We understand by this it was meant that the plaintiff was entitled to recover for the whole expenditure incurred in 1868 in building houses, buying mules and feeding them, and for the hire of hands, which were not used or worked on the place on account of its being largely under water. From the testimony on this point, as it is given in the record, it would be almost impossible to say what, if anything, was the loss of plaintiff on that account. Young Mr. Bourquin states that "three mules were bought at $150 each; cost of feeding them was about $15 00 or $20 00 per month; hire of hands to take care of them $20 00 per month and rations. Had eleven hands at work that season at thirty-

five cents a day and rations." He further says: "Of the three mules bought, plaintiff has two now. One was sold for $100 or $150 00." The plaintiff testified, "that in the spring of 1868 he resumed planting, or attempted to do so, hiring hands, building houses, buying mules, utensils and implements, expending therein about $3,500 00." He then adds that he was compelled to give up the hope of making a crop, on account of want of repair of the canal, and that owing to certain leaks and breaks in its banks the water overflowed his fields and prevented him from preparing his land for cultivation." Neither of the witnesses state how much of this expense was a loss on account of not cultivating the overflowed fields. It certainly was not the whole $3,500 00, for one of them states that eleven hands were worked that season. Nor was the defendant liable for what was paid for the purchase of the mules, or building the houses, unless they were worthless to plaintiff. He sold one of the mules—still has two, and the houses, and, doubtless, the utensils and implements, and also had the work of all the hands he seemed to have paid for and fed. Other hands who did no work were paid nothing. The charge of the court, taken literally, would have given the plaintiff his whole "outlay" for all these things, even if no loss or damage resulted from their non-use. Even had the court put the proper limitation on his charge, and the pleadings had authorized it with such limitation, there were not sufficient *data* to ascertain what proportion of the expenses so incurred was a loss to plaintiff by reason of the default of the defendant.

It may be added that if the plaintiff knew at the time such outlay was made that his land was submerged so he could not cultivate it, he could not tax defendant for his loss resulting from the expenses paid out by him.

We think a new trial should be granted, and another investigation had.

Judgment reversed.