THE STANDARD OIL COMPANY

*v.*

ROBERT BUCHI et ux.

[Submitted April 4th, 1907. Decided April 17th, 1907.]

1. A deed whereby, for a cash consideration named and the payment of damages to be ascertained by disinterested persons on oath, one grants the right to lay pipes for the transportation of petroleum, together with all the rights and privileges necessary to the enjoyment of the grant and the removal of the pipes, the pipes to be laid within ten feet of the line of the grantor's property, does not convey a mere easement in gross, nor a license which may be revoked at the will of the grantor, and it is not revoked by its assignment to a third person.

2. Under a grant of right to lay pipes in land to convey petroleum, the exercise of the right by the laying of a single pipe and later of a second pipe does not define the extent of the easement so as to prevent the laying of a third pipe.

3. Under a grant of right to lay pipes in land to convey petroleum, the mere lapse of time does not affect the right of the grantee to lay additional pipes.

On order to show cause why an injunction should not issue. Heard on bill and affidavits.

*Mr. Gilbert Collins,* for the complainant.

*Mr. J. Emil Walscheid,* for the defendants.

PITNEY, ADVISORY MASTER.

The object of the bill is to obtain judicial restraint preventing the defendants from interfering, by strong hand and serious threats of violence, with the complainant's work in laying across the lands of the defendant in Bergen county a line of pipe for the transportation of oil.

At and just before the filing of the bill the complainant had placed on the premises of the defendant a number of joints of pipe, and had leaded them together,, ready to be buried beneath the earth, and its workmen were about to excavate a trench for that purpose when they were driven from the premises by threats of the defendant's daughter to shoot them, accompanied with the actual presentation of a pistol.

The complainant claims the right in question by virtue of a deed dated the 30th day of October, 1882, and duly recorded on the 6th day of December, 1882, in the clerk's office of Bergen county, where the lands lie, between James H. Kingsland, predecessor in title of the defendant and then the owner of the lands in question, and one John B. Barbour, under whom the complainant claims.

That deed, or so much of it as is necessary for present purposes, is as follows:

"Witnesseth, That for and in consideration of five dollars, in hand paid, the receipt of which is hereby acknowledged, and the further sum of twenty dollars, to be paid before any pipe is laid, the party of the first

part, his heirs and assigns, hereby grants to the party of the second part, his heirs and assigns, the right of way to lay pipes for the transportation of petroleum, and operate the same on, over and through his lands, in said county of Bergen, in said State of New Jersey, described in a certain deed dated September 13th, 1881, and recorded in the county clerk's office of Bergen county, in Book Z-10, page 542, of Deeds, together with all the rights and privileges incident and necessary to the enjoyment of this grant and the removal of said pipes.

"In further consideration of said grant and demise, the party of the second part hereby agrees to bury the said pipes a sufficient depth so as not to interfere with the cultivation of the soil, at least three feet, and to pay any and all damages which may arise from the laying, maintaining or operating of said pipe lines, said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, on oath, one thereof to be appointed by the party of the first part, his heirs and assigns, one by the party of the second part, his heirs and assigns, and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive.

"It is understood and agreed between the parties hereto that said pipe lines are to be laid within ten feet of the southerly lines of the above-described property, excepting where there are angles in said property lines, at which points such deflections shall·be made therefrom as the surveyor of the party of the second part may decide to be necessary.

"Witness our hands and seals the day and year first above written.

"(Signed)     JAS. H. KINGSLAND.     [L. S.]
"(Signed)     J. B. BARBOUR."     [L. S.]

The bill alleges, and in this respect is supported by the affidavits, or at least is not disputed on this motion, that the grantee, Barbour, was a mere agent or trustee for procuring the right of way (and land for pumping stations) for a continuous underground series of pipes conducting petroleum from Pennsylvania and other oil-bearing regions to tidewater; that in 1880 he purchased certain land in Bergen county from a Mrs. Zabriskie, and an adjoining tract from one Knowles, for the purpose of a pumping station, which he immediately conveyed to the Standard Oil Company, and that the deed above mentioned from Kingsland was also taken by said Barbour as a part of the right of way for a great pipe-line system for conducting oil from the oil regions to tidewater, and shortly afterwards was assigned and conveyed to the complainant, and a continuous line of oil-bearing pipe was laid over it, including the Kingsland strip, and pumping stations erected, and the pipe line put in use for the purpose of conveying oil, and has been in use ever since.

That later on, in 1894, a second pipe line was laid alongside

the first along the entire length of the Kingsland property and put in immediate use, and that the object of the present proposed interference with the soil of the defendant is to lay a third pipe line over the whole right of way, close beside the first.

The justification set up by the defendant amounts to a demurrer to the bill, and the argument in its support may be briefly stated as follows: That the grant contained in the Kingsland deed amounted to no more than the grant of an easement without the naming of any dominant tenement, and therefore amounted to no more than an easement in gross, which was not assignable, and hence amounted to a mere license, and was determinable at the will of the licensor; that the license was in law immediately abandoned by the assignment thereof, and that it was also formally determined by a notice of revocation given by the defendant Buchi to the complainant, dated March 5th, 1907, and annexed to the bill of complaint.

The first inquiry naturally is, what is the true character of the grant in question?

Is it properly classified either as a true and simple easement or as a mere revocable license, or is it something more than either?

It is to be observed, in the first place, that it is an instrument under seal and expresses to be for a valuable consideration presently paid, with the provision for the ascertainment of a further consideration in a mode, the reasonableness of which seems to me to be quite apparent and which has not been attacked in the argument.

In the next place, it is not a mere promise to do something in the future, nor is it a mere permission, but it is a grant *in præsenti,* and it is not a mere privilege given to the grantee which can be considered as merely personal to him, such as a privilege to wander over ground with or without the privilege of hunting or fishing, but it is made to the grantee, his heirs and assigns.

Then it is not the mere privilege to walk or pass over land without the right to disturb the soil, as is a right of way, but it is a "right to lay down pipes for the transportation of petroleum and to operate the same over" the lands, "together with all the right and privileges incident and necessary to the enjoyment of

the grant and the removal of the pipes." This grants rights in the soil *in perpetuo*.

Now, just here the defendant attempts to meet this aspect of the case by setting up that he does not propose to dispute or disturb what has already been done under the so-called license, or to interfere with the complainant in the enjoyment of its works already on his land, but he claims the right to prevent any further exercise of the rights mentioned in the grant. Nor does he contend that the right to lay the third line of pipes is not included in the terms of the grant. Nor does he contend that there is anything inequitable in the complainant's standing before the court. On the contrary, he puts himself on the bold, bare ground that because there was no dominant tenement mentioned in the grant to which what would have been an easement was appurtenant or appendant, the easement, so called, became one in gross and not assignable, and by its attempted assignment ceased to exist in law, or at least degenerated into a mere license, revocable so far as not acted upon.

· Now, is it possible to treat the document in question as having no greater force than that? The doctrine contended for, if logically applied, leads to this result: If Mr. Barbour had paid Mr. Kingsland $1,000 in cash for this grant, and had the next day assigned it to the complainant, it would have been possible for Kingsland to have immediately destroyed the value in the law of his grant by a formal revocation of it, and the complainant would have had no relief in equity by showing that Barbour was acting merely as its agent, for it is not contended by the defendant that the Standard Oil Company has not the capacity in law of holding the title to and operating a pipe line such as that described and in actual use. And it is to be observed that the question is not whether, in the then present condition of the law, the Standard Oil Company had the right to acquire by condemnation proceedings the lands and rights of way for its pipe line and pumping stations from the western oil fields to tidewater, but the question is whether, having first purchased the lands and rights of way through agents, by means of divers conveyances which did not disclose, so far as relates to mere rights of way, any termini or dominant tenement, it could have been prevented by any one of

the grantors from proceeding to lay its pipe across the grantor's land. Or rather, whether, having acquired title in that manner, by grants which provided in effect the right to add to its pipe line from time to time, and having acted upon those grants so obtained, and having built a great trunk line and being in possession and use thereof, it may be prevented from adding thereto on the ground here taken.

The question is a serious one and has received my careful consideration, aided by elaborate arguments by counsel.

It is serious because it is quite notorious that it has been a common practice in starting great enterprises of this character, to acquire necessary rights in the manner here adopted.

Now, to return again to the grant itself. In addition to the characteristics already noticed it is to be remarked that the object of the grant is mentioned, namely, the transportation of petroleum. Now, it was then common knowledge that petroleum was produced mainly, if not entirely, in Western Pennsylvania and regions to the west of that locality, hundreds of miles from the *locus in quo,* and that its principal place of preparation, by refinement for market and distribution, was in or near the city of New York. Now, it seems to me that under these conditions the grantor and his assigns are chargeable with notice, from the very language of the grant, that this line of pipes was to extend from the various sources of the crude petroleum to tidewater, and that, from the very nature of the case, it was not a mere easement which granted to a dominant tenement a right or privilege in a servient tenement. And I think, further, that the grantor could not have supposed that the grantee, Barbour, expected himself, personally, to exercise the right granted, but that it would be transferred to some corporation for exercise in connection with many other like grants, the whole creating a long through route from the oil regions to tidewater.

Now, with these preliminary remarks, is it possible to conceive that the idea of an easement requiring a dominant tenement could have been in the minds of the parties, and further, is it possible that the grant could be construed to be one involving a dominant tenement to which it was appurtenant?

The idea underlying the ordinary easement is that it is at the

expense of one tenement, called the servient tenement, and for the benefit especially of another tenement, called the dominant tenement. Clearly the right granted by the deed in this case was not of that character, and hence it must be construed by rules not applicable to those of ordinary easements. There was in this case and could in the nature of things be no dominant tenement.

Nor is it, in its essential nature, a license, nor can it be reduced in its nature in that respect. It by its terms granted a permanent right to lay the pipe, to maintain the same and to remove the same. It gave an interest in the land quite as positive and as permanent as that in which a deed is given granting the right to lay a line of water pipes or to erect a line of telephone poles across the grantor's land, where the circumstances indicate that the work done thereunder was to be permanent.

From these considerations, based on general and familiar principles, I come to the conclusion that the defendant's position is untenable, especially when urged in a court of equity.

Let us now consider some of the authorities cited by the learned counsel for the defendants.

Among the first of those is the famous case of *Ackroyd* v. *Smith, 10 C. B. (1 Scott) 164.* That was the case of the conveyance of a piece of land with a right of way over other lands of the grantor to the land conveyed, with the addition of the words "for all purposes," and it was held that an assignee or grantee of the land so conveyed could not justify under the grant unless he showed that the act done under it would be justifiable without the words "for all purposes." That was in effect holding that a right of way in gross was not assignable. It was a case of pure easement of way, which gave no interest in the soil itself.

It is proper to remark here that the doctrine so established has been confined generally to cases of pure easements. See *Goodrich* v. *Burbank, 12 Allen 459,* and see, per Justice Earl, in *Mayor, &c., of New York* v. *Law, 125 N. Y. 380* (at *p. 392*), where he says: "It is quite true that easements must generally be appurtenant to some land or estate, and that there must be a dominant estate to which the easement appertains and a servient

estate upon which it is imposed. But that is not true of all easements. There may be easements in gross which are not appurtenant to any land, and which the owner may enjoy, although he does not own or possess a dominant estate, or any land whatever. Here the intention was to create an interest in this wharf by this grant which the grantee could enjoy himself or convey to any other persons."

The next case cited by counsel is *East Jersey Iron Co.* v. *Wright, 32 N. J. Eq. (5 Stew.) 248.* That was the case of a license or privilege, under seal, given by the owner of certain lands' to one Rude, whereby the owner agreed with Rude, his executors, administrators and assigns, that he and they should have the exclusive right and privilege of raising and removing ore from certain lands belonging to the owner, with the privilege of entering upon them for the purpose of raising and removing ore and erecting buildings, &c. Rude, as the only consideration, agreed to pay the owner twenty-five cents per ton for all ore removed. This paper was executed in 1857, and all that was done under it was to dig a hole deep enough to show the existence of the vein of ore. It was then abandoned by Rude and his assigns. The original owner, who gave the instrument, passed the title to his son, who made a new grant or license to a new party, who entered and worked the mine. It was held by Vice-Chancellor Van Fleet that it was a mere license, and not a grant, and that it was not a lease, citing numerous well-considered authorities. Moreover (and this is the principal ground of his decision), he held that the instrument plainly showed that the licensee was bound to enter within a reasonable time and prosecute the work, so that the owner would receive the consideration; that he could not stand by, like a dog in a manger, and do nothing, and thereby disappoint the owner of the land in what was his reasonable expectation, namely, to receive the royalty of twenty-five cents per ton of ore, as provided for in the instrument, and that his conduct in that respect amounted to an abandonment of his rights, whatever they were, under the instrument.

The next case cited by counsel is *Eckert* v. *Peters, 55 N. J. Eq. (10 Dick.) 379.* In that case one Green, being the owner of a sea-front tract of land of considerable extent, lying on the

easterly side of Ocean avenue in Monmouth county, and reaching from that avenue to the sea, and another separate tract on the west side of Ocean avenue, granted the tract on the west side, which was capable of being divided into several tracts, to a grantee,

"together with the free use and full rights of sufficient land on my sea front for bathing purposes, with the right to erect thereon bath-houses, and use the same free of charge, undisturbed, at any time."

It was held that while that grant gave the right to future owners of the lands on the west side a right of way from the avenue over the land on the east side to the sea, yet that so much of the grant as gave the right to erect bath-houses and use the same free of charge was revoked by the death of the grantor and subsequent conveyance.

The learned vice-chancellor held that a strip forty feet wide, which had been set apart as a right of way to the shore, was ample for that purpose. He then comments upon the vagueness and uncertainty of the language referring to bath-houses and their use, the non-limitation in number and the failure to locate their place on the large tract fronting the sea, and then holds that the right to place and use the bath-houses was, under the authorities, a mere license, and sustains his judgment by abundant authority and sound reasoning. The case has no application here, where the location of the pipes and their object are clearly defined, and the permanent estate in the soil is given by clear and proper language. The difference between an oil-bearing pipe, laid in the ground, and a portable bath-house is quite manifest.

Another case relied upon by counsel is *Mitchell* v. *D'Olier, 68 N. J. Law (39 Vr.) 375.* The only effect of that decision is to hold that a conveyance of land bordering on a small lake, together with a right of boating on the lake for pleasure and amusement, and to fish therein for pleasure, and to cut ice therefrom for their own private domestic use, was, under the circumstances, a clear appurtenant to the land granted, although no words so expressly declaring were found in the deed, and that these rights passed without being mentioned as an appurtenant to the land so conveyed in a subsequent conveyance to a third party.

The court does, indeed, express its opinion that a private easement, accompanied with a *profit a prendre,* could not be held in gross, thus expressing a preference for the English rule rather than the rule held by some of the American states. Such expression was simply for the purpose of showing that the grant of the rights in the lake passed as an appurtenant to the land conveyed without any express declaration to that effect, and did not pass to the grantee as a personal right or in gross. At the same time the right of certain entities to hold the rights properly exercised by them without any dominant tenement is clearly recognized on *p. 380.* The court also points out that, according to the old English doctrine, a *profit a prendre* may be held in gross, and shows an error in that respect in the language used in the opinion in *Cobb* v. *Davenport, 32 N. J. Law (3 Vr.) 369.*

Another case cited by the defendant is *Wilkins* v. *Irvine, 33 Ohio St. 138.* That was a writ of error in an action at law to recover a balance due for the purchase-money of a tract of land agreed to be sold and conveyed by Irvine, the plaintiff, to Wilkins, the defendant below. The defence set up by Wilkins, by answer and cross-petition in equity, was that the land contracted to be conveyed was subject to an easement or encumbrance arising out of a grant in writing, but unsealed, and not recorded, given by certain previous owners of the land to the Cleveland Rolling Mill Company of a right to lay down across the land and permanently maintain a water pipe from the Cuyahoga river to the rolling mill's works for the purpose of carrying water to the works, and that the grant had been executed and the pipe laid and the defendant prayed a rescission of the contract. The answer to this defence was that the defendant, Wilkins, had no knowledge or notice of either the existence of the pipe or of the grant and therefore was able to hold the property free and clear of the easement. The defendant, by his counsel in argument, urged that he, Wilkins, should not be compelled to assist Irvine in practicing a fraud upon the rolling mill company. On the other hand, it was urged by counsel for Irvine that under the peculiar statutes of Ohio the license in that case, not being under seal and recorded, created no encumbrance, and the extreme ground was taken that although the former owners of the land

had, in the grant, used this plain language, "We hereby grant to said company the right to come upon said lands and so lay said pipes at a depth of not less than two feet and there permanently to maintain the same, with like privilege at any time for repairs, relaying or removing," yet that, althought fully executed, for want of a seal it was a mere license and revocable.

The court held that under the statute, which it cites at length, an unsealed, unacknowledged paper like the one in question could create no encumbrance. It further held, under another section of the statute, that if unrecorded it must be deemed fraudulent as against any subsequent *bona fide* purchaser without notice. The court intimated no opinion on the question of an executed or non-executed license being revocable, but put their decision distinctly on the ground that the defendant had no right in equity to a rescission, because he was a *bona fide* purchaser without notice. The decision was by a majority of three against two of a court of five judges.

The result of the decision is simply to hold that a *bona fide* purchaser without notice of an encumbrance cannot set up that encumbrance in any court as a defence to a suit for purchase-money.

The defendant also cites the famous case of *Wood* v. *Leadbitter, 13 Mees. & W. 845 (1844)*. This is the famous race-course ticket case, in which the plaintiff, after having purchased a ticket issued by the stewards of the Doncaster races, was ejected from the grounds, and the ticket was held to be a mere revocable license. The opinion of Baron Alderson is a carefully-prepared and luminous exposition of the law on the subject, so much so that it is quoted *in extenso* by Mr. Gale in the fourth edition (London, 1868) of his treatise on *Easements,* where will also be found many cases decided in England on the subject after *Wood* v. *Leadbitter.* It is cited by the defendant here to sustain the proposition that the fact that the license here in question is created by deed does not alter the situation. But an examination of the opinion in question shows that its character for revocability depends upon the construction of the instrument itself, and the whole of what the learned baron says on *pp. 844,*

*845* is most instructive, and by no means supports the contention of the defendant's counsel.

*Wood* v. *Manley, 11 Ad. & E. 34,* another case cited by defendant, not only has no bearing on the present question, but is against his general proposition. The headnote is this:

"Goods which were upon plaintiff's land were sold to the defendant. By the conditions of the sale, to which plaintiff was a party, the buyer was to be allowed to enter and take the goods.—*Held*, that after the sale plaintiff could not countermand·the license."

Another case cited by defendant's counsel is *Berry* v. *Potter, 52 N. J. Eq. (7 Dick.) 664.* There a father said to his daughter and her husband that they might pick out, among several tracts of land, a certain tract as their share in his property and take present possession of it, and that he would make his will giving it to his daughter. The daughter and husband took possession, and the father afterwards became insane, and a guardian was appointed, who demanded possession of the premises. In the meantime the daughter and her husband had taken possession and worked certain clay banks. Vice-Chancellor Bird held that it was a mere parol license, and could not be set up in defence to the demand of the guardian for possession of the premises. There was there no written grant, and the case has no application here.

Finally, the defendant makes the point that the complainant, having once exercised its right of laying a single pipe, and again later a second pipe, all before the title became vested in the defendant, cannot now enlarge the burden of the easement by now adding a third pipe, and he relies upon the very recent decision of Vice-Chancellor Bergen in *Sked* v. *Pennington Spring Water Co., 65 Atl. Rep. 713,* and he relies also upon the well-known cases of *Johnson* v. *Jaqui* and *Jaqui* v. *Johnson,* both in the court of errors and appeals, and reported in *27 N. J. Eq. (12 C. E. Gr.)* at *pp. 526* and *552,* respectively.

The case of *Sked* v. *Pennington, &c., Co.* was this: Sked conveyed to the company the right to build a reservoir, not exceeding a half acre in extent, at what is called the "middle spring," and to convey the water away, but not designating by

metes and bounds, or in any other manner, the precise shape or location of said reservoir. The defendant entered and constructed the reservoir and abducted water, but did not include in the boundaries of the reservoir quite a half acre of land. Ten years later, having occasion to increase its supply, it entered on the premises and commenced to sink what is known as a driven well outside the limits of the reservoir, but so near it that, by a new line of circumference which should include the original reservoir and the *locus* of the driven well, no more than one-half an acre would be included, and the learned vice-chancellor enjoined such work. He did this upon the principle that, having once located their half acre, the defendant could not go outside of such location.

The distinction between that case and this is manifest. Here the limits of the original grant is clearly defined as being within ten feet of the southern boundary of the land.

That the mere lapse of time does not affect the complainant's right was held in the case of *Wheeler* v. *Wilder, 61 N. H. 2.*

That a grant may be made in advance to individuals in favor of a corporation afterwards to be organized seems to have been held in *Salem Capital Flour Mills Co.* v. *Stayton Water-ditch and Canal Co., 33 Fed. Rep.* 146. The case is very lengthy but the part from which I draw my inference is found on *p. 153.*

I have examined a large number of cases bearing upon this question and agree with what Vice Chancellor Van Fleet said in *East Jersey Iron Co.* v. *Wright, 32 N. J. Eq. (5 Stew.) 248* (at *p. 254*), viz., that the adjudications upon this subject cannot be reconciled, and "if an attempt should be made to arrange them in harmonious groups I think some of them would be found to be so eccentric in their application to legal principes as well as in their logical deductions as to be impossible of classification."

Mr. Gale, in the edition of his work on *Easements,* previously cited (at *p. 20 et seq.*), attempts a list of those recognized up to the date of that edition. Among them I find none like the present.

I think the present grant is something more than an easement, although undoubtedly it includes easements, and I think that it is a great deal more than a license, in that it gives an irrevocable

interest in the land and creates, by apt words, an estate; is expressed to be upon a consideration and is sealed by the seal of the grantor.

I can find no authority in any of the treatises or in any of the adjudged cases for holding that it is revocable.

As in my judgment the right of the complainant is entirely clear and not subject to revocation I think it is entitled to relief by way of immediate injunction.

But I think that such relief must be upon conditions contained in the grant which requires that the complainant enter into bonds to the defendant, to be approved by a special master, to pay such damages as may be ascertained in the manner expressed in the deed above recited.