## ROCK RUN IRON COMPANY *v.* HEATH.

ATKINSON, J. 1. On the trial of a contest between rival claimants to have title to certain land declared and registered under the provisions of the land-registration act (Acts 1917, p. 108), the examiner appointed thereunder decided that certain deeds relied upon by one of the claimants as color of title on which to base a prescription were forgeries. On the trial before the jury of an exception of fact to such finding, there being evidence tending to show that persons whose names appeared as official witnesses on the purported deeds did not hold commissions as such officers at the time the deeds purported to have been executed, the judge instructed the jury as follows: "If you should find from the evidence that the party witnessed these deeds as a justice of the peace or as a notary public, or however they may be witnessed officially, if that official, at the time, did not hold such a position officially and was not commissioned, and had no authority to officially witness the deeds and did so in an official capacity, you will be authorized to find such a deed a forgery, and in that way to sustain the finding of the examiner in this case." *Held:* The instruction proceeds on the assumption that the deed was actually executed by the maker. If so executed, it would not be converted into a forgery merely because a witness attesting it officially was not in commission at the time of the execution. The charge was not a correct statement of the rule of presumption as to forgeries, as expressed in *Parker* v. *Waycross & Florida Ry. Co.*, 81 *Ga.* 387 (8 S. E. 871); Powell on Actions for Land, 262, § 213. The error in the charge was sufficient to require the grant of a new trial to the objector who introduced the deeds as color of title.

2. Actual adverse possession of lands by itself for twenty years will give good title by prescription, Civil Code (1910), § 4168. But such prescriptive title will not include any part of a given tract of land beyond the limits of the actual possession. *Baker* v. *White*, 136 *Ga.* 541 (71 S. E. 871). Adverse possession of lands under written evidence of title for seven years will also give a title by perscription. Civil Code (1910), § 4169. A prescriptive title under this section cannot be founded on written evidence of title executed less than seven years prior to commencement of the action, even though the pretended prescriber and those under whom he claims may have been in adverse possession for the full prescriptive period.

3. Applying the principles stated in the preceding note, the evidence required a finding sustaining the exception of fact filed by the objector to the report of the examiner, which found that the applicant had established a prescriptive title to certain of the lots and was entitled to have them registered in his name.

4. Except as indicated, above, none of the other assignments of error are meritorious or of such character as to require elaboration.

*Judgment reversed. All the Justices concur.*

No. 3052. FEBRUARY 16, 1923.

Land registration. Before Judge Wright. Floyd superior court. December 31, 1921.

On September 28, 1920, C. E. Heath filed a petition to the superior court, under the land-registration act (Acts 1917, p. 108), to have title declared and registered in his name to 14 lots of land, each containing 40 acres more or less, in the 16th district and 4th section of Floyd County. The Rock Run Iron Company by appropriate pleadings objected to registration of four of the lots (namely, lots numbers 450, 510, 511, and 512) in the name of Heath, and asked that title to them be declared and registered in its name. The petition was duly referred to an examiner for proceedings in conformity with the land-registration act. The examiner found that lots 510, 511, and 512 should be registered in the name of Heath, but found that lot 450 was not subject to be registered in the name of either party to the suit. The Rock Run Iron Company filed exceptions of law and exceptions of fact to the findings of the examiner. The exceptions of law were overruled, and exceptions pendente lite to that ruling were duly entered. The exceptions of fact were allowed and submitted to a jury, which returned a verdict finding against the exceptions. The Rock Run Iron Company filed a motion for a new trial, which being refused, it excepted, assigning error also on the exceptions pendente lite.

The following appears from the record: Neither party had a complete chain of title from the State to any of the lots in question, but each claimed to have title by prescription to all of the lots. The Rock Run Iron Company introduced as color of title a deed executed by James L. Selman, executor, to O. C. Nelms, dated April 9, 1871, and successive conveyances to the Rock Run Iron Company, each deed conveying lot number 510. It also introduced as color of title a deed from J. S. Sanford, executor, to T. J. Ragsdale, dated December 3, 1850, and successive conveyances to the Rock Run Iron Company, each deed purporting to convey lots numbers 450, 511, and 512. In connection with such deeds W. D. McCollum testified: "This land was coaled along in the '90's. I understood that it was coaled by the Bass Furnace. They would coal the land and then move on. No permanent structures were built by the Bass Furnace." J. M. Garwin testified: "I am acting manager and vice-president of the Rock Run Iron Company, the objector. Have been connected with it for thirty-one years. Bass Furnace Company was

the predecessor of the Rock Run Iron Company. The Bass Furnace Company had the timber cut off of all the lands in controversy, and made charcoal therefrom. One T. J. Davis did the coaling for the Bass Furnace Company. The land was coaled for about ten years, beginning about 1895. Nothing has been done with the lands since it was coaled, except to pay taxes on it. We have been waiting for the timber to grow again, so that it would be ready for coaling. The land is not under fence, and is wild land. We never heard of any counter-claim to this property until these proceedings began. We have been paying taxes on this property over 20 years." There was no other evidence as to possession of any of the land by the Rock Run Iron Company. One of the deeds in the chain of title introduced by the Rock Run Iron Company purported to be witnessed by the clerk of the superior court of Marion County, Georgia; two purported to be witnessed by named justices of the peace, and another by a named commissioned notary public and ex-officio justice of the peace of Floyd County, Georgia. These deeds were attacked on the ground that they were forgeries, and evidence was introduced tending to sustain that charge. The evidence referred to included, among other things, testimony to the effect that the persons whose names appeared as official witnesses to the deeds did not appear from the records of the State to be in commission at the dates upon which the deeds purported to have been executed.

The applicant, C. E. Heath, introduced as color of title deeds purporting to convey the lots to himself from two sources, as follows: (1) A deed from E. L. Bates as administrator of W. H. Beacon, dated November 2, 1915, purporting to convey lots numbers 450, 510, 511, and 512 directly to himself. (2) A deed from C. D. Highfield, dated August 4, 1917, purporting to convey lots numbers 510 and 511 directly to himself. (3) A deed from C. D. Highfield, dated October 26, 1917, purporting to convey lots numbers 510, 511, and 512 to himself. Relatively to the three lots last mentioned, Heath introduced deeds to Highfield from two sources, as follows: (1) A deed from C. E. Shaw, dated July 5, 1915, purporting to convey lots 510 and 511. (2) A deed from C. L. Gillam, dated July 19, 1915, purporting to convey lots 510, 511, and 512. The foregoing deeds were in-

7

troduced as color of title, .but no other written color of title to any of the four lots in issue was introduced by Heath.

C. E. Heath testified in his own behalf: "I claim all of the lots described in petitions 859, 860, 861. . . I am in possession of said property. . . A part of the land is cleared and under cultivation. I have been in possession of the property since 1915. There is a fence built around part of it. I don't know who built the fence nor when it was built. Eight acres are in cultivation. I don't know what lot the house is on. All the property described in the three petitions is in one tract. About twenty acres of the whole tract is under fence. I think the fence is on lot 510. . . I built the house. I have lived in the house practically all the time since it was built. I batched there when I first built it. These lots were wild lots until I went into possession of them. There was no field, fence, or house when I went into possession of same. I had deeds to all this property, but I lost them one day while I. was on my way from Rome to Cedartown. I lost a pocketbook that contained them. . . I now store hay in the log-house that I built on lot 510, and in which I batched in 1915."

J. D. Scott testified: "There are about 35 or 40 acres of this property cleared, in different places. There are about 8 acres cleared at the barn. There is more than a lot altogether under fence. Highfield farmed a part of it for ten years. I know the Cohen tract." W. D. McCollum testified: "I knew C. D. Highfield. He .lived on this tract and claimed it as his own. He sold it as his own." C. D. Highfield testified: "A man by the name of Gilliam lived on this property 20 years or more. Lots 511 and 512 are under fence. I raised goats and sheep on this property; about 200 head were kept there by me. I cultivated two other lots. I was born and raised there. I am 52 years of age. I think Heath is on lot 509. I sold Heath 513-16-4. All I sold Heath was not in one tract. I owned it 10 or 12 years."

*C. I. Carey,* for plaintiff in error. *James Maddox,* contra.