KERLIN *et al. v.* SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

No. 13483.   MARCH 12, 1941.

*Swift Tyler* and *W. E. Armistead,* for plaintiffs in error.

*Hirsch, Smith & Kilpatrick* and *E. D. Smith Jr.,* contra.

Bell, Justice. ■ While the petition alleged that the tract of land in question is claimed by J. J. Kerlin, and treats him as the owner of the fee, the suit was instituted against both him and his wife, and for convenience we may employ the term *defendants,* just as though they owned the land together. Also the parties will be designated herein according to their positions in the court below. It appears from the petition that, more than twenty years before the suit was filed, the plaintiff purchased from the Commercial Telephone Company a line of telephone poles and wires which was then in existence over and across the property now owned by the defendants, and which had been used by that company in the telephone business. The purchase included all of the franchises, pole lines, and rights of way of the Commercial Telephone Company; and the plaintiff from the time of such purchase has continuously used "said pole line and the wires thereon," and has continuously occupied the land for such use. It also appears that such occupancy has been open, notorious, exclusive, adverse, and peaceable, and accompanied by a claim of right. There is some discussion in the briefs in reference to prescription by possession for seven years under color of title; but the petition refers to no deed or writing as evidence of the plaintiff's purchase, and hence it discloses nothing which might be taken as color of title. Code, § 85-407; *Byrom* v. *Riley,* 154 *Ga.* 580 (114 S. E. 642). According to the allegations, however, the plaintiff acquired by adverse possession for twenty years a prescriptive easement over the defendants' land at least for the space actually occupied by the original telephone poles and the wires between them, together with the right of ingress and egress for the purpose of maintenance and repair. Code, §§ 85-401, 85-402, 85-403, 85-406, 85-409. Counsel for the defendants apparently concede that the petition does show an easement

to this extent, devoting their argument mainly to other, though related, questions. So far as necessary, these questions will be stated and dealt with in succeeding divisions of this opinion.

The petition shows that from the time of the original use by the plaintiff, the claimed easement or right of way embraced approximately twelve telephone poles, and wires attached to and running between them, the number of wires not being stated. The plaintiff proposed to string upon "said pole line" two more wires, which are alleged to be necessary in the conduct of its business. In order to acquire a prescriptive title by virtue of possession alone for twenty years, such possession must be actual, and the prescription will not extend beyond "the possessio pedis." *Tillman* v. *Bomar,* 134 *Ga.* 660 (5) (68 S. E. 504); *Baker* v. *White,* 136 *Ga.* 541 (71 S. E. 871); *Rock Run Iron Co.* v. *Heath,* 155 *Ga.* 95 (2) (116 S. E. 590). The defendants invoke this principle, and contend that the petition does not show that the two additional wires, if strung as proposed, would be placed within the physical realm of the existing prescriptive easement; and if we do not misconceive their contention, it goes to the extent of insisting that, as related to the right to use any space for the location of equipment such as poles or wires, the easement is limited to such space as was actually occupied by specific poles and wires at the inception of the prescriptive period and was continuously so occupied for the duration of that period. Whether or not the rule as to "possessio pedis" should be applied strictly in case of an easement, which relates to use and not to the fee, and assuming without deciding that it should be so applied, yet the phrase "possessio pedis," as used in the decisions, means nothing more than actual possession as defined in the Code, to wit: "Actual possession of lands is evidenced by inclosure, cultivation, or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another." § 85-403. Under this definition of actual possession as a requisite to prescription, it would seem that the original poles and wires with their appurtenances should be considered as marking or outlining a general area as being in use according to the usual and ordinary manner; and that if the outer limits of this space remained the same for the prescriptive period, the easement would apply at least to such general area, so that the string-

ing of additional wires anywhere therein consistently with customary location would be permissible as territorially within the easement, whether or not the identical space to be physically occupied by such wires had ever been so occupied by other wires. Whether or not the rights of one in the plaintiff's situation should be thus limited, we do not hesitate to hold that on recognized legal principles they go to this extent. Under the allegations of the petition, it is unnecessary to decide more as to this question, and we will not attempt to rule upon that which we do not find in the case.

The petition alleged that the wires are to be strung "over the said pole line," and it is fairly apparent from all of the allegations that these wires are to be attached to poles whose location and dimensions are within the general area originally occupied. Thus, as against a mere general demurrer, the necessary conclusion is that the addition of these two wires will not encroach upon any space which is beyond or without the prescriptive easement; certainly not appreciably so. The case thus differs on its facts from *Savannah & Ogeechee Canal Co. v. Bourquin,* 51 *Ga.* 378 (2), 388, *Ellington v. Bennett,* 59 *Ga.* 286 (3), *Martin v. Seaboard Air-Line Railway,* 139 *Ga.* 807, 809 (77 S. E. 1060), and similar cases, where effort was made to extend the right of use beyond the area as to which it had been obtained. If the petition could be construed as showing an intention to use or occupy space additional to the general area in use as indicated above, a different question would be presented. See Postal Telegraph Co. *v.* Forster, 73 Ore. 122 (144 Pac. 491, Ann. Cas. 1916E, 979).

■ Having concluded that the petition did not show an intention on the part of the plaintiff to place the additional wires without the bounds of the existing prescriptive easement, we are next confronted with the question whether this easement would authorize the slightly increased use which would result from stringing the two additional wires. We think this question should be answered in the affirmative; the proposed additional use being a change in degree only, and not in kind, and appearing to be a reasonable and normal incident of the existing prescriptive right. Upon this particular question it seems there is no Georgia case in point, although similar questions have been dealt with in a few other jurisdictions. In Baldwin *v.* Boston &c. R., 181 Mass. 166

(63 N. E. 428), it was held that an easement consisting of a foot-path which had been acquired through travel might be used by the occupants of other houses later constructed on such estate, such new use being a change in degree and not in kind. In the opinion it was said: "Since prescription presupposes a grant which is lost, the proof of the nature of the grant is to be found in use; and it is frequently stated, in some form of language, that the nature of the right acquired by use is measured and limited by the nature of the actual use. . . It is plain that, if the doctrine is to be taken strictly, then the right must be confined to the very persons who have passed over the way; and in the case of a carriage way, as stated by Parke, B., in Cowling v. Higginson, 4 Mees. & W. 245, the right would 'be confined to the identical carriages that have been previously used upon the road, and would not warrant even the slightest alteration in the carriage, or the loading, or the purpose for which it was used.' No one would contend for so strict a construction, and the truth is, as stated by the same judge in the same case, that 'one must generalize to some extent.' As in the case of a grant the language is to be construed in the light of the circumstances, so in the case of prescription the use is to be looked at in the same way. The nature of the right is not to be determined by the actual proved use alone, but by that in connection with the circumstances. If, for instance, it be proved that the way had been used for all purposes required by the person claiming it, that would be evidence of a general right. . It is to be noted that we are not dealing with a case in which there is any physical change in the kind of use of the way. It is a footway, and nothing else. So far as respects the burden upon the servient tenement, it is immaterial whether the person using the way goes to one house or the other after passing through the gate. Each house is situated upon the land as it existed when the use began. The lot is the same, is small in size, and there never can be many dwelling-houses upon it. The only change is that five families live there now, instead of one; and the only change proposed in the use of the way is that more pedestrians may use it than before, but for the same purposes as before. . . No case has been shown to us, nor are we aware of any, where the change in the use of the land has been only in degree, and not in kind, in which it has been held that the way could not be used to

the land in the changed condition, especially if there was no increased burden upon the servient estate. To base a distinction upon such a change would be unwise in theory, and impracticable in practice." The reasoning in that decision appeals to us as sound, and it is directly applicable to the case at bar. Whether the plaintiff would have stood in better or worse position if its claim had been based on actual grant or on condemnation, we simply note the fact that in the Massachusetts case the right claimed, just as here, was based on prescription.

If the additional burden would be radical or unreasonable, in view of the normal and ordinary use in such cases, it might not be permissible, even though it did constitute only a change in degree; but since we must know that the addition of only two wires in the manner alleged would not be unreasonable or abnormal and would amount to a change in degree only, we are of the opinion that the right to attach them would come within the existing prescriptive easement, and that on proof of the allegations the plaintiff would be entitled to injunction to restrain the alleged interference on the part of the defendants. On the general subject, see Western Union Telegraph Co. v. Polhemus, 178 Fed. 904; Standard Oil Co. v. Buchi, 72 N. J. Eq. 492 (66 Atl. 427) ; Crosier v. Shack, 213 Mass. 253 (100 N. E. 607, L. R. A. 1918A, 260) ; Mahon v. Tully, 245 Mass. 571 (139 N. E. 797) ; Frazier v. East Tennessee Telephone & Telegraph Co., 115 Tenn. 416 (90 S. W. 620, 3 L. R. A. (N. S.) 323, 112 Am. St. R. 856) ; Hobbs v. Long Distance Telephone & Telegraph Co., 147 Ala. 393 (41 So. 1003, 7 L. R. A. (N. S.) 87) ; Mayor &c. of Canton v. Canton Cotton Warehouse Co., 84 Miss. 268 (36 So. 266, 65 L. R. A. 561, 105 Am. St. R. 428) ; City of Newark v. Central R. Co., 267 U. S. 377 (45 Sup. Ct. 328, 69 L. ed. 666). In view of what has been said, the petition stated a cause of action, regardless of the allegations in reference to the tree the branches of which the petition alleged were touching some of the wires and constituting a danger to the telephone service; and since counsel for the defendants (the plaintiffs in error) virtually concede in their brief that the plaintiff would have the right to clear this obstruction, though insisting that the petition fails to show any intended interference as to this matter, we do not deem it necessary to determine the force or effect of these averments toward the statement of a cause of action. If a petition states a

cause of action for any part of the relief sought, it is proper to overrule a mere general demurrer. *Blaylock* v. *Hackel,* 164 *Ga.* 257 (5) (138 S. E. 333).

*Judgment affirmed. All the Justices concur.*