Wiley *vs.* Warmock *et al.*

| 30 | 701 |
| 120 | 842 |

## WILEY *vs.* WARMOCK *et al.*

1. While a tract of land is held and known as a whole, a possession of a part may be a possession of the whole, to the extent of the paper title under which it is held. And so, too, where the whole tract, as such, is claimed by the adverse party, then perhaps the possession of a part may be construed into the possession of the whole. But where a tract or settlement of land is made up of different lots or parcels, and the adverse claim is to one only, then the possession of another part of the tract cannot ripen into a statutory title as against the particular lot claimed.

2. Where five or ten acres of a lot of land, covered by water, is inclosed by a fence, in the absence of all proof to the contrary, the presumption is, that the act is done by virtue of the claim of right to the premises so inclosed; and especially when the act is accompanied by a cotemporaneous declaration that both that lot, and the one contiguous, all belong to the occupant.

Ejectment, in Lee county. Tried before Hon. ALEXANDER A. ALLEN, March Term, 1859.

For the facts of this case, see the opinion of the Court.

WARREN & WARREN, and W. A. HAWKINS, for plaintiffs in error.

HINES & HOBBS, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

We think the Court erred in charging the jury that if Wiley inclosed a part of the lot No. 229, around the pond, simply to avoid making a fence through the water, and not under claim of title, then the statute did not bar the plaintiffs, and they would be entitled to recover.

Wiley owned a large body of land, some thirteen hundred acres, conveyed to him by Shotwell, and of which tract the lot in dispute made a part. ·He seeks to sustain his plea of the statute upon two grounds: 1st. That his occupation of a part of this tract is an occupation of the whole; and 2d. That his inclosure of from five to ten acres of a pond on lot No. 229, in 1845, more than seven years before this action was brought, gives him a statutory right to this particular lot.

As respects the first position, it is true, only with this qualification: That where a tract of land is well known as a whole, possession of a part is possession of the whole, to the extent of the defendant's paper title. So, too, where the claim of the adverse party is to the whole of the land, then the occupation of a part may constitute adverse possession of the whole.

But where a large body of land is made up of different lots, and the claim of the plaintiff extends only to one lot, it would be dangerous to hold that a settlement upon any part would oust the plaintiff of his right of entry to any part.

But what is the proof as to the inclosure of from five to ten acres of lot No. 229 in 1845? The fence then built by Wiley has remained ever since. When he made this inclosure, so far from owning title in another, the overseers who were engaged in putting up the fence said it was all Wiley's

land anyhow. There was no evidence to authorize the Court to qualify the possession of Wiley as it did by the charge. On the contrary, there was not only the open, visible, notorious occupation, but that, too, under claim of right by his agent or overseer. And if this be so, then, certainly, this partial occupation of lot No. 229, by an inclosure, was a possession to the extent of the boundary of the lot No. 229, the premises in dispute; and that being so, neither the charge nor the verdict of the jury, rendered probably on account of the charge, were sustained by the testimony.

The motive of Wiley in fencing in the pond was demonstrated by the act, and his declaration was indicative of his motive, and in accordance with his act.