## PARKER, executor, v. SALMONS *et al.*

1. The possession of land acquired by a father under a conveyance made to his infant daughter by her grandfather and delivered to such father, can never ripen into a title by prescription in favor of the latter as against the grantee.

2. In such a case, where the father, upon delivery to him of such deed, enters into possession of the premises thus conveyed, and after the majority of the grantee, retains such possession and conceals from the grantee the fact of the existence of the deed and exercises the rights of an owner by renting to her a portion of the land, and while in ignorance of her rights the grantee thus acknowledges or acquiesces in his apparent claim of ownership, the possession of the father, under such circumstances, will not support a claim of title by prescription so as to enable the father, or

his executor, to recover against the grantee who takes possession of the land after acquiring knowledge of the existence of her right and title thereto. Such possession, so far as the same is adverse to the grantee, is a moral fraud as against the latter, and accordingly does not serve as the foundation of a prescription.

3. Where a grandfather delivers to a father a deed conveying to the latter's daughter (an infant of tender years), in consideration of love and affection, title to a tract of land, such delivery to and possession of the deed by the father is evidence of delivery to the infant. This is true although the deed does not purport on its face to be delivered, but, being signed and witnessed by two persons neither of whom was an officer, was afterward probated by one of the witnesses and duly recorded.

4. A deed conveying "the balance of the Robert Swilling tract of land lying on the waters of Reed creek, containing sixty-six acres, lying southwest from said James Reed, cornering on a post-oak adjoining John Crocker and Maulden, thence a straight line to a white oak down the waters of Reed creek," is not, as matter of law, so wanting, vague and uncertain in matter of description as to be void and inadmissible as evidence of title. Whether from such a description, aided by other competent extrinsic evidence, the property intended to be conveyed could be identified, was a question of fact and properly submitted to the jury.

5. There was no error in admitting testimony, and the verdict is supported by the evidence.

Argued April 14, — Decided May 19, 1897.

Equitable petition. Before Judge Reese. Hart superior court. March term, 1896.

*W. L. Hodges* and *A. G. McCurry*, for plaintiff.
*J. H. Skelton* and *O. C. Brown*, for defendants.

LITTLE, J. The action which is the foundation of this case was in the form of an equitable petition, seeking to enjoin the defendants from building on a tract of land in controversy, from cutting or felling the timber thereon, from cultivating the land, from interfering in any manner with the petitioner in the management and cultivation of the land, and from interference with the possession and ownership of the plaintiff. The action was treated by the parties and the court below as involving the title to the premises in dispute. The evidence was conflicting on many points raised, and the jury returned a verdict for the defendants. A motion for a new trial was overruled by the court, and the refusal to grant such new trial on the grounds assigned in the motion is the alleged error of which complaint is made.

It is not controverted that in 1845 one Jonathan Bailey·

owned a tract of land containing about 260 acres, known as the Robert Swilling tract, situated at that time in Franklin, now Hart county. In the record reference is made to three deeds which were in evidence, and which, if valid, conveyed the title to the Swilling tract out of Jonathan Bailey. One of these deeds, dated the 20th of December, 1845, conveys to James Reed a described tract of land containing 78 acres, a part of the Swilling tract. The evidence further tends to show that at the date of this conveyance, the grantee, who was the son-in-law of the grantor, was living on said 78-acre tract of land, and had so lived for some time previous to that date. The second of the deeds is dated the 10th day of December, 1845, and conveys to four persons, named Harris, whom the description shows to be minor grandchildren of the grantor, another part of said tract containing 116 acres. The third conveyance is from Jonathan Bailey to Sarah Reed, his granddaughter, dated also in December, 1845. It purports to convey 66 acres, for the consideration of natural love and affection. The property conveyed therein is designated as "*balance of the Robert Swilling tract of land*," etc. The deed further designates this particular tract as lying southwest from said James Reed; and it is not contested that, if this latter paper is valid as a deed, all of the Swilling tract is disposed of by these three conveyances. Only the deed last described is in question. The original was not produced at the trial. It appears that this deed was signed and sealed by Jonathan Bailey and "tested" by A. H. Black and Littleton Vincent. It does not purport on its face to have been delivered, but it appears that on the 15th day of December, 1845, it was probated in the usual form by one of the witnesses, Littleton Vincent, before H. F. Chandler, J. P., and after such probate, it was on the same day recorded in the office of the clerk of the superior court of Franklin county. There is evidence in the record tending to show that the original deed from Jonathan Bailey to Sarah Reed was in the possession of James Reed, her father, during his lifetime. At the time this paper purports to have been executed, the grantee, who was the daughter of James Reed, was of the age of three or four years; and it appears

that James Reed went into possession of the land soon after the execution of the deed, and remained so in possession to the time of his death in 1894. Soon after he died, the defendants entered upon the land and were proceeding to build a house and prepare a portion of it for cultivation when these proceedings were instituted by the executor of James Reed.

1. The plaintiff in error bases his right to have granted the relief for which he prays, on a prescriptive title in his testator. The record does not show any conveyance made by any one at any time to James Reed to the land in dispute. It tends, however, to show that within a short time after the execution of the deed from the grandfather to the infant daughter of the testator, James Reed entered into possession; and in the absence of any conveyance to himself, and having custody of the deed to his infant daughter, the possession so acquired must be treated to have been under the conveyance to his daughter, in which case he would hold the land, not in his own right, but in the right of the daughter. Dodd v. McCraw, 3 Eng. (Ark.), 83. Taking the testimony of the witness who saw the original deed in the father's possession to be true, it is manifest that he entered under that conveyance. Having so entered, such possession, while it continued, could never be the foundation of a prescriptive title. In order for possession to ripen into a title, it must be in the right of the possessor, and not of another. Civil Code, § 3584.

2. But the plaintiff in error contends that this possession continued, not only during the infancy of the daughter, but for more than twenty years after she had attained her majority. This is not material, in ascertaining whether the testator had acquired the title by possession. Having entered, not in his own right, but in the right of another, and the possession thus obtained continuing, lapse of time would not ripen it into a title, there being no evidence of any conveyance to him, nor of any holding other than by virtue of his original entry.

It is further contended on the part of the plaintiff in error, that subsequently to the arrival at age of the daughter, the testator manifested by his acts that he claimed, as against her, possession of this land in his own right; that he continued so to

manifest his right of possession against her for a period of more than twenty years; and that, notwithstanding his original entry might not have been in his own right, after he made it appear that he did so claim possession of the land the possession thus claimed would ripen into title. However this may be, there is a reason why the jury before whom the case was tried might legally find that the possession so claimed did not result in a prescriptive title to the father. The witness who testified that he saw the deed from Jonathan Bailey to his granddaughter, in the possession of the testator, also testified that the testator knew its contents and knew who was the grantee therein; that he attempted to conceal knowledge of the existence of such deed and told the witness to say nothing about it; and it having been shown that at the time of the execution of the deeds in 1845, which made disposition of the Swilling tract, the grantor, Jonathan Bailey, had prepared a plat of that tract and each subdivision, covered by the respective deeds, which plat went into the possession of James Reed, presumably about the time of the execution of the deeds, and was found among his papers after his death, these facts would support a finding that the claim of possession in his own right by James Reed originated in fraud, which would prevent such claim from ripening into a title. Civil Code, § 3584. If a person takes possession of land which he knows does not belong to him, no prescription will run in his favor, however long he may hold possession of the same. His possession under such circumstances originates in fraud, and time will not cure or sanctify the fraud. *Cowart* v. *Young*, 74 *Ga.* 694. The testimony of some of the witnesses shows that after the grantee had arrived at age and had married, the father rented to her a particular portion of this tract of land; she testifying that, at the time, she had no knowledge of her title. This is one of the strongest grounds that the plaintiff in error makes for basing a claim of adverse possession by the testator. At the time, however, of these acts which tend to manifest adverse holding, the evidence shows that the testator knew that the paper title to the land was not in him, but in the daughter to whom he rented. This knowledge was fatal to his claim of title. He could take nothing by his own

wrong. *Lane* v. *Lane*, 87 *Ga*. 271. When the doctrine of pre-scription is involved in a suit in ejectment, good faith is one of the main elements in the cause. If one purchases land in bad faith, knowing that the title he purchases is fraudulent, it can never ripen into a good title. The law will not permit the true owner to be defrauded of his land in that way. *Brown* v. *Wells*, 44 *Ga*. 573; *Hunt* v. *Dunn*, 74 *Ga*. 120. If it was a fact that the testator entered into possession of this land under a deed to his daughter, he was in law a trustee for her, and it was his legal and moral duty, when she reached her majority, to transfer to her possession of the land, with the muniments of title. Thornton on Gifts, 159, et seq. If it be true that, instead of doing so, he concealed from her all knowledge of her title, claimed the title and right of possession in himself, and rented to her a part of the particular land which she owned, it was a moral wrong on his part, and the true owner of the land could not be ousted by an adverse claim made under these cir-cumstances. This court has held in a number of cases, that the fraud necessary to vitiate possession is more than a mere legal fraud. Adverse possession is one of intention, and it turns upon the good faith of the person setting it up. The facts must be such as to affect his conscience, and they must be brought home to him. *Wright* v. *Smith*, 43 *Ga*. 291. He must be cognizant of the fraud, not by construction, but by actual notice, and no man can be fairly said to hold land ad-versely to another, who at the time he goes into possession has notice that he is perpetrating a fraud. His claim of right must have simply been pretended. *Ware* v. *Barlow*, 81 *Ga*. 1. In a case where an administrator had gotten into his hands assets, bonds, etc., belonging to the intestate in England, which were unknown to the heirs to have belonged to him and the heirs had only lately discovered the fact, the administrator having made no return of said assets, bonds, etc., but on the contrary, having not only concealed the fact that he had them, but that they in fact existed, Judge Story said that the guilty party shall not be allowed to say that his own concealment of the plaintiff's right shall work in his favor. 5 Mason's Reports, 110.

It is true that in many of these matters the evidence was conflicting. The jury settled the question, however, as to the facts of the case. With that settlement this court is satisfied, and can not say that the verdict which they rendered is contrary to the evidence and the principles of justice.

3. The plaintiff in error further contends that the court erred in admitting in evidence the deed from Jonathan Bailey to Sarah Reed, over the objection of plaintiff, the ground of such objection being that the instrument was not in law a valid deed. This assignment of error upon the validity of the deed is very general in its nature, and does not point out any particular invalidity which may exist. An inspection of the instrument, however, shows that it did not purport on its face to have been delivered. It was signed in the presence of two witnesses, neither of whom was an officer, and their signatures as witnesses were made under the word "test." It is not essential, in our opinion, that the deed should have borne on its face any purport that it was delivered. Subsequently to its execution, the deed was, as before stated, probated in the usual form by one of the witnesses before a magistrate. The usual form is an affidavit that he saw the grantor sign, seal and deliver it for the purposes for which it was intended, in the presence of the two witnesses named. If there were any defects in the want of proper attestation of the deed as executed, this probate certainly makes it whole. The deed was recorded on the day this probate was made, and, at the time of this trial, had appeared on the records in Franklin county for nearly fifty years. The question of delivery was a proper question for the jury. The deed being recorded, it was admissible in evidence without further proof, not only to show that it was signed, but that it was also delivered. *Rushin* v. *Shields & Ball*, 11 *Ga.* 640. The record of a deed is of itself presumptive proof of its delivery. *Wellborn* v. *Weaver*, 17 *Ga.* 275; *Harvill* v. *Lowe*, 47 *Ga.* 217. In 3 Wallace, 641, Field, J., says: "The registry of a deed by the grantor is entitled to great consideration upon this point, and might perhaps justify, in the absence of opposing evidence, a presumption of delivery." See also Tiedeman on Real Property, § 812; *High-*

*field* v. *Phelps*, 53 *Ga.* 59. Delivery of a deed executed in behalf of an infant for the consideration of love and affection, to a witness of the deed for the benefit of the infant, is delivery to the infant. *Watson* v. *Myers*, 73 *Ga.* 138. Under the circumstances which appear in the evidence as to the record and possession of the original deed, we deem the delivery to have been sufficient in law.

4. The instrument is inartistically drawn. The description of the land is shown in some details to be inaccurate. The deed does, however, by its terms convey the "balance" of the Robert Swilling tract of land; it does say that it contains 66 acres; it does place it as lying in a given direction from another known tract. In connection with the other deeds conveying the other parcels of the named tract, which were in evidence, we can not say, as a matter of law, that the instrument is so wanting, vague and uncertain in description as to be void and inadmissible as evidence of title; but that, when aided by other competent extrinsic evidence which we find in the record, the property intended to be conveyed can be sufficiently identified, and such was the conclusion of the jury.

5. There was no error in admitting the testimony of Sarah Salmons, one of the defendants, on the ground that James Reed, the plaintiff's testator, was dead. The judgment of the court below is *Affirmed. All the Justices concurring.*