36798. SPILLERS *et al.* v. JORDAN.

Decided September 18, 1957—Rehearing denied
September 30, 1957.

*W. D. Aultman*, for plaintiffs in error.

*W. B. Mitchell*, contra.

TOWNSEND, J. ■ The plot in controversy is a narrow strip of land running north and south, bounded on the east by a fence and on the west by an imaginary line dividing the landlot into two halves. From the plaintiff's own testimony it appears that for over 50 years neither he nor his predecessors in title have been in actual physical possession of any part of the land west of the fence which they themselves erected, and accordingly they have no claim to land west of that fence except by showing that it is included within the deeds which form the plaintiff's chain of title. On this vital question the evidence is completely silent. The deeds in evidence, which date back to 1878, describe the plaintiff's land in the first district (in which district, from the plats in evidence, the disputed territory is located) in one of two ways: either as the Morgan Place bounded by the lands of Molly Jordan, or as "all of lots 13 and 14 in the First District lying east of a straight line running from the road at the fence

west of the new ground cleared by C. C. Elliott to the south line of said dower near the draw bars, leaving out the old settlement and spring of Childres." There is testimony that the plaintiff's property is the old Morgan Place and that Molly Jordan was Mathews' predecessor in title. The plaintiff testified as follows: "The way I understand it, Mr. Mathews owns the west half of lot 14 in the First District. I own the east half. I suppose I have the deed, I haven't it with me, it is down yonder in the courthouse, 'course it is on record. My deeds burned up when my house burned up, most of them." At another point he testified: "I own half of lot fourteen in the first land district, cast half; the old deed shows that, that is my contention." From this testimony it is clear that the plaintiff claims the east half of landlot 14, but whether he claims it by virtue of either of the deeds introduced in evidence or by virtue of some other deed not in evidence is not clear. On the vital question of whether the line as claimed by the plaintiff and run by his surveyor is in fact the same as that of any deed in the plaintiff's chain of title the record is entirely silent. Nothing in the deeds refers to a line bisecting the landlot, and nothing in the evidence identifies the landmarks called for in the deed, such as the road, the fence, the new ground, the dower or the draw bars. The plaintiff accordingly failed to show either title or possession in himself as to the land in controversy, for which reason the verdict, on the general grounds, is without any evidence to support it.

■ Error is assigned on the failure of the trial court to charge without request the provisions of Code § 85-406 as follows: "Actual adverse possession of lands for 20 years, by itself, shall give good title by prescription against everyone, except the State," and of Code § 85-403 as follows: "Actual possession of lands is evidenced by inclosure, cultivation, or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant." If the evidence raises an issue as to whether title to the disputed strip is in the defendant by reason of adverse possession on the part of himself and his predecessors in title for a 20-year period it is the duty of the court to charge on the law relative to this issue, and failure to do so, even in the absence of a specific request so to charge, would be reversible error. *Jones*

v. *Harris*, 169 *Ga.* 665 (3) (151 S. E. 343). The record shows that this action was filed in December, 1955; that J. W. Lowe purchased his property in 1928; that predecessors in title of the plaintiff had placed a fence on the land about 1905 but according to the plaintiff's testimony had not intended it as a land-line fence because at that time there was a road just west of the fence which would have interfered with their pasture; that this fence later fell into disuse. The plaintiff testified: "Mr. Lowe bought it and fenced it, place as a pasture, but he come up to my old fence and fixed it up, what wire there was and put more and I found it out in a few days and I jumped on Mr. Lowe about it, he said, 'Well, I didn't know where the land line was, I send hands here.' Well, anyhow, he said, 'We'll straighten it out,' that is all I can say about it. He fixed the fence . . . After I told Mr. Lowe that fence was not on the line after he had fixed it up again, his use of it as a pasture was a permissive use, I gave him my consent for him to use the pasture, and not to set aside an established land line." J. W. Lowe testified for the plaintiff: "I bought that land from Miss Molly Jordan . . . I put a fence up there. When I put the fence there Mr. Jordan came down there when I was working on it and said, 'Bill, I think you are a little over the line down here,' and I said, 'Sam, I don't know where the line is and I'll put it anywhere you say put it,' and he said, 'Well, just let it go on like it is, land ain't worth nothing no how,' and said, 'If I ever become dissatisfied with it I will let you know,' something to that effect, not those exact words . . . I wouldn't say that I found a fence there when I bought it. I don't remember whether there was any fence there or not now, I sure don't. Mr. Jordan told me to go ahead and put the fence where I wanted to, he told me if he ever became dissatisfied he would let me know and he never did let me know. I sold timber off there twice; I don't remember where they cut it to but I sold the timber off that place twice. As to whether I don't think they cut it up to the fence—well, I didn't go down there to see. I did not tell them the fence was the line, I told them I thought it was near the line; I told everybody that I sold it to what Mr. Jordan and I had said, but I thought it was on the line. I pastured it all the time up to that

fence, all the time I had it I kept cows out there." Thus, the testimony of the landowners involved between the years 1928 and 1941 demands a finding that Lowe, although he was of the opinion that the fence was the line, did not make any adverse claim to the land in dispute, and in fact offered to change the fence to a line to be designated by the plaintiff since he did not in fact know where the line was, and that the plaintiff, on the other hand, agreed with him that he might use the land up to the fence until further notice to cease doing so. Had there been evidence that the plaintiff had title to the disputed tract, then this evidence in connection therewith would demand a finding, on the question of adverse possession, that the defendants had not acquired title through 20 years' occupation of the land. Whatever possession there was on the part of the defendants would have been permissive, and permissive possession can never be the basis of prescription. *Doris* v. *Story*, 122 *Ga.* 611 (4) (50 S. E. 348); *Jay* v. *Whelchel*, 78 *Ga.* 786, 789 (3 S. E. 906); *Parker* v. *Salmons*, 101 *Ga.* 160 (1) (28 S. E. 681, 65 Am. St. R. 291). That element of hostility which is necessary to establish prescription is totally lacking from this testimony. The evidence might be sufficient, however, to show acquiescence in the bound-ary line for a period of seven years and thus establish the line under the provisions of Code § 85-1602. The testimony of Lowe and Jordan, construed together, leaves an ambiguity as to whether Jordan meant to acquiesce in Lowe's use of the land, or to acquiesce in Lowe's choice of a dividing line. If the latter, of course, the possession by Lowe for more than seven years there-after established the line of the fence as the true dividing line between the properties. The court did not err, under the evidence here, in failing to charge Code § 85-406. Code § 85-403, defining the meaning of the term "actual possession," would be an ap-propriate rule of law in any case where an issue is raised as to title by prescription the foundation of which is based on actual possession.

■ Error is also assigned on the failure of the court to charge the provisions of Code § 85-1603 as follows: "Where actual pos-session has been had, under a claim of right, for more than seven years, such claim shall be respected, and the line so marked as

not to interfere with such possession." This charge, if applicable would apply between the years of 1941 and 1955, since the possession of Mathews was admittedly hostile to that of the plaintiff, and his purchase would act as a beginning point for a prescriptive title. As stated in Powell, Actions for Land (rev. ed.), page 388: "If a person holding permissively conveys to another who, being ignorant of the character of his vendor's holding, believes him to be the owner, a new claim of title springs up in behalf of the purchaser; and if the purchaser in this state of mind takes possession, his holding becomes adverse to the claim of title under which his vendor held." However, as stated in the same text, page 58: "When the parties have not actually agreed upon the line and there has been no establishment of it by acquiescence of both coterminous owners for seven years, if one of the coterminous owners encroaches beyond his true boundary, though he does so in good faith and as a result of honest mistake, he has only a bare possessio pedis beyond his true boundary, and cannot ripen any title thereby in less than twenty years." See also La Roche v. Falligant, 130 Ga. 596 (61 S. E. 465).

The courts have had difficulty in the past reconciling Code § 85-1603 providing, in processioning proceedings, for respecting a boundary held under a claim of right for seven years, with Code § 85-407, which gives title by prescription to land held for seven years under color of title. While it has been said that the latter applies to actions for land and the former to boundary-line disputes where title is not involved, it is obvious that one cannot be entitled to a boundary line unless he owns some property right in the land marked off by such boundary. What was said concerning a claim of right originating in permissive possession in Christian v. Weaver, 79 Ga. 406 (7 S. E. 261) applies to processioning cases only. The words "claim of right" are not the same as color of title, and mean only a hostile possession undertaken in good faith. See Ewing v. Tanner, 184 Ga. 773, 780 (193 S. E. 243); Wiley v. Warmock, 30 Ga. 701 (2). Such a possession, where there is no color of title, cannot ripen into prescriptive ownership in less than 20 years, although in a processioning proceeding it is prima facie presumed from such pos-

session for a period of seven years that the occupant has such property right in the land as entitles him to continued possession. In *Jones* v. *Harris,* 169 *Ga.* 665 (3), supra, it was held, in an action for trespass involving adjoining city lots, that "there was no issue upon the question of the title of either of the parties to their respective lots, but the question at issue as made by the pleadings and evidence was the true location of the dividing line at the time of the alleged trespass," and that a failure, under the evidence in the case, to charge Code § 85-1603 was reversible error. In *Standard Oil Co.* v. *Altman,* 173 *Ga.* 777 (161 S. E. 353), (in which case there was a stipulation that the issue was not the back title of either party but the true boundary line between the lands) it was held that the question was nevertheless one of title, that the trial court erred in giving in charge Code § 85-1603, and that this Code section in any event applied only to rural lands, not city lots. *Veal* v. *Barber,* 197 *Ga.* 555, 561 (30 S. E. 2d 252) distinguishes the *Standard Oil Co.* case, finds the statement that Code § 85-1603 applies only to city lots to be obiter, and then says of the charge on this Code section: "The damage . . . was declared to lie in the fact that it caused the jury to believe that adverse possession for seven years, despite lack of paper title, would give good title. Under the Code, § 85-406, possession, in the absence of color of title, must be continuous for a period of at least twenty years before such possession can ripen into prescriptive title. Processioners determine the location of lines as they actually exist, and not lines as they ought to be. Suits for the recovery of land require juries to fix lines as they ought to be." An action for trespass for cutting timber necessarily incidentally involves title (cf. Code § 105-1412) because it involves the question of whether the entry was legal or illegal. In spite of the attempts to explain the case, it still appears to the writer that *Jones* v. *Harris,* 169 *Ga.* 665, supra, conflicts with the earlier Code sections on the one hand and the later cases on the other, and that the safest rule to follow would be to apply Code § 85-1603 in processioning cases only. A further attempt was made in *Wight* v. *Davis,* 202 *Ga.* 239, 242 (42 S. E. 2d 641) to reconcile the *Standard Oil Co.* and *Jones* cases, supra, on the ground that "it does not appear that either

434

the plaintiff or the defendant was claiming title to any land that was not embraced in their respective deeds." In the present case it does not appear that either plaintiff or defendant is claiming any land which *is* embraced in the respective deeds, and neither side has carried the burden of showing a title or color of title under which prescriptive rights could arise in less than a 20-year period. Code § 85-1603 was properly omitted from the charge.

The trial court erred in denying the motion for new trial.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*