## 40108. SEIGNIOUS v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.
## 40229. COTTER et al. v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.

CLARKE, Justice.

This appeal concerns the title to a small parcel of land which is a part of the tract which formed the very nucleus of Atlanta at the time of its birth. The seeds of this controversy were sown at the beginning of Atlanta, but the current litigation began more recently when Seignious filed a suit claiming title to land situated in an area which has been called Meat Row Strip. As the suit progressed, other parties were joined and the title to additional parcels became involved. The parties claiming title to various portions of the subject land are the heirs of Samuel Mitchell, the Metropolitan Atlanta Rapid Transit Authority, the City of Atlanta, and the State of Georgia. Among the issues the trial court faced were the construction of an 1842 deed from Mitchell to the State, the construction of an 1870 settlement agreement and deeds between the heirs of Mitchell and the State, whether the State can acquire title by prescription, and under what conditions a grantor may prescribe.

The trial court referred the case to a Special Master who found MARTA to be the owner of three of the parcels in question; the City of Atlanta to be the owner of one parcel; and the State of Georgia was found to be the owner of air rights over the land held by MARTA. The trial court's judgment adopted the Special Master's report and we affirm.

In 1842 Samuel Mitchell deeded to the State certain property in Atlanta known as "State Square." This property was located between Alabama Street on the south, Decatur Street on the north, Pryor Street on the west and Loyd Street (now Central Avenue) on the east. The property was deeded to the State for the building of a terminus for the Western & Atlantic Railroad.

Some years later the heirs of Samuel Mitchell brought suit

against the State for the return of the property, arguing that it had never been used for railroad purposes. The parties arrived at a settlement, and in 1870 there was an exchange of deeds which gave the Mitchell heirs certain property fronting on Alabama Street and which gave the State whatever interest the heirs might have in the remaining portion of State Square.

The basis of the controversy which spawned the 1870 settlement was the claim that the 1842 deed provided that the land revert to the grantor if not used for railroad purposes. In *Samuel Mitchell Estate v. Western & Atlantic Railroad,* 167 Ga. 728 (146 SE 556) (1928), we found that the 1842 deed, properly construed, conveyed a fee-simple title to the property of the State. This decision lays to rest the controversy of the reversionary interest, but even if it did not, the reference point for the present controversy is the 1870 settlement rather than the 1842 deed.

Part of the land received by the Mitchell heirs in 1870 was divided into subdivision lots and sold. Another portion of the property was conveyed to the City of Atlanta. The lessee of the state-owned Western & Atlantic Railroad in 1873 built a side track south of the main tracks on the portion retained by the State. This track remained until 1964.

While engaged in controversy with the State, the Mitchell heirs were also involved in a dispute with the City of Atlanta over the southern portion of State Square and an area adjoining State Square to the west. In a separate settlement with the City of Atlanta the Mitchell heirs conveyed to the City a portion of the property received in their settlement with the state. This property known as the City subdivision, was ultimately sold to the Metropolitan Atlanta Rapid Transit Authority (MARTA) in 1975 and 1976.

MARTA eventually became owner of all the lots in the City subdivision and in the Mitchell heirs subdivision except for the interest reserved by R. C. Seignious, one of the plaintiffs here, in his deed to MARTA. In 1979 the State deeded to MARTA all its interest in the area known as "Meat Row Strip," retaining air rights and space support.

The parties to this suit claim all or part of Meat Row Strip. This area is described by the Special Master as including all of parcels 2, 3, and 4, as well as a strip south of parcel 4, and a triangular piece of property extending into Pryor Street (also referred to as Tracts A, B, C, and D in the Special Master's report). All references to parcels, tracts, lots, and lines in this opinion are as indicated on the diagram designated Appendix A.

Seignious owned lots 38 and 39 of the Mitchell heirs subdivision. In 1976 he conveyed his property to MARTA with a reservation in the

deed as to all of his right, title and interest in Meat Row Strip. He now claims ownership in fee simple of that part of the strip directly behind his lots together with a right of ingress and egress in the rest.

The Mitchell heirs claim fee simple title to the disputed area (1) because of an alleged reversionary interest in the original 1842 deed; (2) because the 1870 deed to the Mitchell heirs from the State included the disputed area and the deed from the Mitchell heirs to the subdivision lot owners excluded it; and (3) the Mitchell heirs insist that their 1870 deed to the City of Atlanta excludes the City subdivision and City tract.

MARTA asserts (1) the reference in the 1870 deeds between the Mitchell heirs and the State to the 77/132 line was a mutual mistake and that the parties always intended that the southern line of the State's property be the 70/113.5 line; and (2) the State acquired the disputed area by adverse possession and subsequently conveyed it to MARTA.

The State of Georgia asserts that (1) it obtained title to the disputed area by virtue of the 1842 deed and never relinquished it; (2) it has title by adverse possession or dedication; and (3) the portion of Meat Row Strip claimed by Seignious was never deeded to him or his predecessors in title and that he has no claim to it by adverse possession.

The question of title to Tracts A, C, and D was referred to a Special Master. He concluded that title to tracts A, B, and C are vested in MARTA with air rights retained by the State of Georgia and that title to tract D is vested in the City of Atlanta. Before turning to the findings of the Special Master, we note that in an action to quiet title brought under OCGA § 23-3-60 et seq. (Code Ann. § 37-1411 et seq.), the findings of the Special Master and adopted by the trial court will be upheld unless clearly erroneous. *Williams v. Mathis,* 237 Ga. 305 (227 SE2d 378) (1976).

1. The area which is at the heart of the present controversy is Tract A as shown on the diagram marked Appendix A. The Special Master found, and we agree, that the metes and bounds descriptions in the 1870 deeds between the State and the Mitchell heirs show the dividing line between the State and Mitchell properties as a line running from a point on Loyd Street (Central Avenue) 77 feet north of Alabama Street westerly to a point on Pryor Street 132 feet north of Alabama (the 77/132 line). Although there are plats showing a line beginning on Loyd 70 feet north of Alabama and one plat shows it running westerly to a point on Pryor 113.5 feet north of Alabama (the 70/113.5 line) as the boundary, the description in the deeds is clear and unambiguous and needs no construction as to the intent of the parties. Therefore, we find that the dividing line between the State

and Mitchell heir properties is the 77/132 line as claimed by the Mitchell heirs.

As noted above, almost immediately following the settlement with the State the Mitchell heirs subdivided the property obtained. The subdivision deeds were made pursuant to a recorded plat of the subdivision which shows the northern boundary of 70/113.5. This plat was recorded six days after the date of the deeds between the State and the Mitchell heirs. Further, the metes and bounds descriptions found in the deeds are consistent with the plat. The Special Master found, and we agree, that there was no mutual mistake between the parties as to the property and that the deeds from the Mitchell heirs to the subdivision lot owners cannot be construed to include Tract A. The Special Master concluded that the State, the Mitchell heirs, and the subdivision lot owners all accepted the 70/113.5 line as the subdivision's northern boundary.

Since the subdivision lot owners had no claim to the area identified as Tract A, it is also clear that R. C. Seignious has no claim to a fee interest in any portion of that property. The Special Master found that Seignious' claim that he had title to any portion of Tract A by adverse possession must fail because testimony showed that he and other subdivision lot owners used the area only intermittently. We agree. Since Seignious never had any fee simple ownership in any part of Tract A, and since Seignious has sold his fee interest in the subdivision lots to MARTA, the reservation in his deed for ingress and egress over Tract A or Tract B is meaningless. Once the necessity ceases, a way of necessity also ceases. OCGA § 44-9-5 (Code Ann. § 85-1402). From this it is clear that a way of necessity cannot exist in a vacuum or be retained by one having no property to be served by the way.

The question which remains as to Tract A is whether it continues to be the property of the Mitchell heirs or whether it belongs to the State by virtue of adverse possession and has now passed to MARTA.

"Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law." OCGA § 44-5-160 (Code Ann. § 85-401). The State may obtain title to property by prescription. *Dept. of Transp. v. Howard,* 245 Ga. 96 (263 SE2d 135) (1980). OCGA § 44-5-161 (a) (Code Ann. § 85-402) defines the possession which is the foundation of prescriptive title as: (1) the right of the possessor and not of another; (2) not originating in fraud; (3) public, continuous, exclusive, uninterrupted and peaceable; (4) accompanied by a claim of right. These elements are present in this case. The maintenance of railroad tracks in the disputed area from 1873-1964 by the State or its

lessee satisfies the requirement of possession which is public, continuous, exclusive, uninterrupted and peaceable. The State's claim of right to this property is evidenced by its inclusion in an 1890 inventory of the property of the Western & Atlantic Railroad made by a Special Commission of the State of Georgia. The State is the owner of the Western & Atlantic Railroad. OCGA § 50-16-100 (Code Ann. § 91-201). References to the State's ownership of this property are also found in the minutes of a meeting of the Western and Atlantic Railroad Commission for June 30, 1916, and in the official State valuation maps for that year. Further, the property was included in that leased by the State to the Nashville, Chattanooga & St. Louis Railway in 1919 and in that leased by the State to the Dixie Terminal Building Company in 1930. Evidence at trial showed that the State has treated the property as its own and that its ownership is widely known. The Mitchell heirs insist that the State's use of Tract A was permissive rather than adverse. However, a claim of right negates permissiveness. *Ewing v. Tanner,* 184 Ga. 773 (193 SE 243) (1937).

The Mitchell heirs further insist that the State cannot adversely possess this property against them because a grantor may not adversely possess against a grantee. This is true where the grantor simply remains in possession after a conveyance. In *Malette v. Wright,* 120 Ga. 735, 742 (48 SE 229) (1904), for example, we held that: "The execution of the deed and placing it upon the public records was a solemn publication to the world that the grantor had conveyed to the grantee the land therein described, and the grantor would be estopped from insisting that one who dealt with his grantee on the faith of the deed must take notice of his possession so as to make inquiry whether or not his deed really spoke the truth." However, in *Kent v. Simpson,* 142 Ga. 49 (82 SE 440) (1914), we found that the rule that possession constitutes notice applies to possession of a grantor after making a grant and that cases in apparent conflict stand on their own facts. In particular, we refused to extend *Malette v. Wright* beyond its facts, which concerned the effect of a mistake in a deed upon an innocent purchaser.

The key to a resolution of an apparent conflict between the general principle that possession constitutes notice of the rights or title of the occupant, OCGA § 44-5-169 (Code Ann. § 85-408), and the rule that a grantor may not adversely possess against his grantee is the notice which starts the running of the prescription. Where a grantor in possession takes some additional step which gives unequivocal notice that he is claiming property as his own, the prescriptive period begins to run. Pindar, *Georgia Real Estate Law,* § 12-21 (2d Ed. 1979). Cf. *Gauker v. Eubanks,* 230 Ga. 893 (199 SE2d

771) (1973). In this case, the state's actions in listing this property in its inventory combined with the other actions listed above which indicate a claim of right gave sufficient notice to authorize the Special Master to find that the State had claimed fee simple title for more than twenty years and had acquired title by adverse possession.

2. Title to Tract C[1] was conveyed to the City of Atlanta in a 1870 settlement with the Mitchell heirs. At the same time that the Mitchell heirs were engaged in a controversy with the State over the 1842 deed from Samuel Mitchell, they were also battling with the City of Atlanta over the southern portion of State Square and the land adjoining State Square on the west. In the subsequent settlement the City released any interest it might have in the area the Mitchell heirs planned to subdivide and the heirs conveyed to the City the western 100 feet of State Square on Alabama Street, extending north 132 feet from the corner of Pryor and Alabama. The City sold the property identified in Appendix A as "City Subdivision" and retained title to the northern portion identified as Tract C. Tract C was conveyed to the State in 1928 and included in the conveyance to MARTA in 1979. The argument of the Mitchell heirs that the deed was vague, indefinite and void or that it excepted Tract C is without merit.

3. Tract D is claimed by the Mitchell heirs because of a reversionary interest arising under an 1846 deed from Samuel Mitchell to the Macon and Western Railroad. The Special Master has concluded that the Mitchell heirs conveyed any interest they might have had in this parcel to the City in 1870. We agree. We are unable to agree with the State's contention that by resolution of the General Assembly in 1925 (Ga. L. 1925, p. 1596) the State acquired title to this tract. Title remains in the City of Atlanta.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 25, 1984 —
REHEARING DENIED FEBRUARY 9, 1984.

*Sibley & Sibley, Jack N. Sibley,* for appellant (case no. 40108). *Thomas C. Kendrick-Holmes,* for appellants (case no. 40229). *Kutak, Rock & Huie, Robert A. Boas, Michael T. Nations, Thomas C. Kendrick-Holmes, James C. Rehberg, Susan Yandle Middleton, Sibley & Sibley, Jack N. Sibley, Michael J. Bowers, Attorney General, Daniel M. Formby, Assistant Attorney General,* for appellees.

---

[1] As the Special Master notes, neither Seignious nor the Mitchell heirs made any serious claim to Tract B.