## S95A0951. FRIENDSHIP BAPTIST CHURCH, INC. v. WEST.
(462 SE2d 618)

CARLEY, Justice.

In 1993, Friendship Baptist Church brought this action for declaratory judgment against West, seeking a declaration that the Church had acquired prescriptive title to a parcel of unenclosed land adjacent to the Church measuring 15 feet by 75 feet. The trial court denied a motion for directed verdict made by the Church, and the jury returned a verdict finding that title was vested in West. The Church appeals from the judgment entered by the trial court on the jury's verdict and enumerates as error the denial of its motion for directed verdict.

Where, as here, there is no color of title and prescriptive title is claimed by virtue of possession for 20 years, the prescription will not extend beyond the actual "possessio pedis," which means the area of actual possession as defined in OCGA § 44-5-165. *Arnold v. Shackelford*, 219 Ga. 839, 843 (2) (136 SE2d 384) (1964); *Kerlin v. Southern Bell Tel. &c. Co.*, 191 Ga. 663, 667 (2) (13 SE2d 790) (1941). Under OCGA § 44-5-165, actual possession may be evidenced by enclosure, cultivation, or any use and occupation which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another. The Church neither enclosed nor cultivated the lot in question. Where there is no evidence of enclosure or cultivation, notoriety and exclusivity become questions of fact for the jury. *Chamblee v. Johnson*, 200 Ga. 838, 842 (1) (38 SE2d 721) (1946). See also *Flannery & Co. v. Hightower*, 97 Ga. 592 (3) (25 SE 371) (1895).

In 1970, the Church began receiving rental payments from a sign company which maintained billboards on the lot. However, the billboards would give notice of nothing more than an easement, as is the case with telephone and power lines and poles. See *Chancey v. Ga.*

*Power Co.*, 238 Ga. 397 (1) (233 SE2d 365) (1977); *Kerlin v. Southern Bell Tel. &c. Co.*, supra at 666 (1). The posts and signs in this case should be considered as marking or outlining a general area which is being used according to the usual and ordinary manner, and if the outer limits of this use remained the same for the prescriptive period, the easement would apply to such general area. *Kerlin v. Southern Bell Tel. &c. Co.*, supra at 667 (2). See also *Humphries v. Ga. Power Co.*, 224 Ga. 128, 129 (3) (160 SE2d 351) (1968). However, the billboards would not, as a matter of law, evidence actual possession by the Church which is so exclusive as to prevent occupation by others of the entire lot or even of the area directly beneath the signs. See *Chancey*, supra at 398.

The Church did mow and occasionally clean up the area, but that is not generally sufficient to constitute actual possession, much less to require such conclusion as a matter of law. 2 CJS 701, Adverse Possession, § 40. Because the lot in question adjoins the Church's property, other claimants could have interpreted such mowing and occasional cleanup as having a merely aesthetic objective and not as an intent to exercise dominion.

Neither the Church's billboards nor its mowing is as notorious or exclusive as the Church's enclosure or cultivation would be. Therefore, the issue of actual possession "becomes a question of fact for the jury. [Cit.]" *Chamblee v. Johnson*, supra at 842 (1). Where there is some evidence on either side of this issue, a reviewing court should not disturb the verdict. *Thompson v. Fouts*, 203 Ga. 522 (3) (47 SE2d 571) (1948).

It follows that the trial court did not err in denying the Church's motion for directed verdict.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Sears and Thompson, JJ., who dissent.*

BENHAM, Chief Justice, dissenting.

I respectfully disagree with the majority's conclusion that the trial court did not err when it denied Friendship Baptist Church's motion for directed verdict. Accordingly, I dissent from the affirmance of the judgment entered by the trial court.

1. The church sought a declaratory judgment that it had prescriptive title to the disputed parcel of land. "Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law." OCGA § 44-5-160. In Georgia, prescription is a method of transferring interests in land without the consent of the prior owner, and rests upon the public policy that "the elapse of a reasonable time should assure security to a person claiming to be an owner." 7 Powell, Law of Real Property, p. 91-5, § 1012 [2] (Rev. ed. 1995). See also *Shiels v. Rob-*

*erts,* 64 Ga. 370, 373 (1879). The possession of real property in conformance with the requirements of OCGA § 44-5-161 for 20 years confers upon the possessor good title by prescription to the property. OCGA § 44-5-163. The possession that serves as the foundation of prescriptive title must be accompanied by a claim of right and "be public, continuous, exclusive, uninterrupted, and peaceable. . . ." OCGA § 44-5-161 (a) (3). Ownership of real property established by an unbroken chain of recorded deeds may thus be lost by the subsequent ripening of a prescriptive title to the property in another. *Hearn v. Leverette,* 213 Ga. 286, 288 (99 SE2d 147) (1957).

In its effort to establish prescriptive title to the real property at issue, the church presented evidence that it had requested and received an unsecured bank loan to buy property at the corner of Northside Drive and MLK Drive in 1970; from 1970 until 1991, the church had received annual rental payments from a sign company which maintained billboards on the lot; and since 1970, church personnel had mowed the grass, picked up debris, and removed campaign signs from the tract. The church's current pastor testified that the property had not been used for any purpose other than billboard rental since 1971, and that no one had come on the property or protested the church's use of the property. On cross-examination, several witnesses agreed that the land could be used for a lemonade stand, picnicking, or tomato cultivation despite the billboards' presence, and that nothing prevented anyone from walking across the land. A representative of the billboard company testified that it had changed the lessor of the billboard site at Northside and MLK from West to the church in 1970. She stated that the company had not verified the change in ownership and remitted rental payments to the church from that point until the company removed the signs in 1991. The witness stated that company records reflected that West had raised questions about the property's ownership in 1986 and 1988, but had never instituted legal proceedings. The representative acknowledged that the company had listed West as the owner of the property in the sign company's 1973 application to the Department of Transportation for a sign permit, and opined that this contradictory information had resulted from copying a City of Atlanta sign application filed by the company in 1951. An attorney who in 1988 wrote letters on West's behalf to the sign company asserting ownership of the property testified that the lot was "fairly well maintained."

The presumption that the church's nonpermissive possession of the property was undertaken in good faith (*Barfield v. Vickers,* 200 Ga. 279, 281 (36 SE2d 766) (1946)) was not rebutted, and it was undisputed that the church's possession had continued for a period greater than the requisite 20 years. Consequently, the church established as a matter of law that it met the temporal requirement of

prescriptive title, and that its possession was based on a claim of right. *Spillers v. Jordan*, 96 Ga. App. 426, 432 (100 SE2d 483) (1957). See also *Ewing v. Tanner*, 184 Ga. 773, 780 (193 SE 243) (1937). Furthermore, by unrefuted evidence that its possession of the tract had not been broken by ouster or successful litigation, the church established as a matter of law that its possession was uninterrupted and peaceable. 1 Pindar, Ga. Real Estate Law & Procedure, Vol. I, § 12-24 (4th ed.); Powell, Actions for Land, p. 397, § 333 (Rev. ed. 1946); *Poss v. Guy*, 212 Ga. 393, 395 (93 SE2d 565) (1956). Left for examination is whether the evidence of the public and exclusive nature of the church's possession was without conflict and was sufficient to demand entry of a verdict of prescriptive title. See OCGA § 9-11-50 (a).

2. The public and exclusive nature of adverse possession

> may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another.

OCGA § 44-5-165. The church neither enclosed nor cultivated the 15′ x 75′ tract, but submitted as evidence of its possession the church's receipt of billboard rental payments and its maintenance of the land. A directed verdict in favor of the church would have been appropriate if, as a matter of law, these acts were sufficiently notorious to attract the attention of other claimants as to the possible existence of an adverse interest, and so exclusive that others were kept from occupying the land. OCGA § 44-5-165.

> For the possession to be notorious or public (for the two words are synonymous as applied to this subject) the physical evidences of it must be such as to notify all other claimants that the possessor is not merely trespassing on the land, but that he is intending to appropriate it to use and ownership. . . . [T]he acts of possession must be such as to indicate an intention to appropriate the land to some permanent use.

Powell, Actions for Land, p. 394, § 330 (Rev. ed.). In order to establish title by prescription, a claimant must exhibit acts of dominion over the property that put all persons on notice of the fact that the property is in the possession of the claimant. 3 AmJur2d 407, Adverse Possession, § 313 (2d ed.). The maintenance of an improvement on real property is evidence to other claimants of the land of one claimant's appropriation of the land for that claimant's use. A 20-year history of renting property and being the sole recipient of the rental payments constitutes powerful evidence of notice to all other claimants of

the lessor's intent to appropriate the land for the lessor's permanent use, as the exclusive receipt of rents is evidence of actual ouster of the record owner. Furthermore, the history of the church personnel keeping the grass under the billboards mowed and the area free of trash and signage is another public and notorious sign of the church's claim of ownership as "[t]he maintenance [of property] satisfies the requirement of possession which is public, continuous, exclusive, uninterrupted and peaceable." *Seignious v. MARTA*, 252 Ga. 69, 72-73 (311 SE2d 808) (1984). As a result, I conclude that the 20-year presence of two to three billboards, each measuring 25′ x 12′, for which rent was received by the claimant, and the care taken of the property by church personnel or agents, including removal of signage placed on the property without permission of the church, constitutes, as a matter of law, sufficient evidence that the church was not a mere trespasser on the land, but was appropriating the land to its own permanent use.

3. That brings me to the question of the church's exclusive possession of the property. " 'Exclusive possession' means that the [claimant] must show an exclusive dominion over the land and an appropriation of it to his own use and benefit." *Carter v. Becton*, 250 Ga. 617 (4) (300 SE2d 152) (1983). See also 2 CJS 725, Adverse Possession, § 54 and 7 Powell, Law of Real Property, p. 91-26, § 1013 [2] [d] (Rev. ed. 1995). A claimant asserts possessory rights by acts that comport with ownership, i.e., acts that would ordinarily be performed by the true owner in appropriating the land or its avails to his own use. *Strickland v. Markos*, 566 S2d 229, 235 (Ala. 1990); *Smith v. Hayden*, 772 P2d 47, 53 (Colo. 1989); *Smith v. Tippett*, 569 A2d 1186, 1190 (D.C. App. 1990).

Exclusive possession does not require the exclusion of every one from all entry on the land, as it is not necessary for the claimant to prohibit any and all use of the property by the general public. 2 CJS 725, Adverse Possession, § 54. An entity claiming prescriptive title is not required to enclose the property claimed in order to sustain the claim. *May v. Sorrell*, 153 Ga. 47 (14) (111 SE 810) (1922); 7 Powell, Law of Real Property, pp. 91-74 — 91-76, § 1013 [2] [h] [ii] (Rev. ed. 1995). "[A] mere casual or occasional trespass on land by a stranger to the title does not interrupt the continuity of an adverse possession." 3 AmJur2d 198, Adverse Possession, § 103. "Possession need not be absolutely exclusive if [the lack of exclusivity] is of the kind expected of an owner under like circumstances." *Hernandez v. Cabrera*, 759 P2d 1017, 1019 (N.M. App. 1988).

There is no question but that the church's act of renting the land to the billboard company for over 20 years constitutes an act of dominion and control over the land, and an appropriation of the land and its avails by the church for the church's benefit. The church's

pastor testified that no one had come on the property since he had assumed the pastoral duties in 1971, and there was no evidence that anyone had challenged the church's exclusive possession of the tract by occupying the land and using it in a manner indicating a claim adverse to that of the church, or with a claim of common or public right. See Annotation, Effect of Public Use on Adverse Possession, 56 ALR3d 1182, 1185. I conclude that the undisputed evidence of the church's acts of dominion established as a matter of law that its possession of the lot was exclusive.

In sum, the church established its prescriptive title as a matter of law and was entitled to a directed verdict in its favor. The trial court's denial of the church's motion was reversible error, and the case should be remanded to the trial court with direction that a judgment in favor of the church be entered.

I am authorized to state that Justice Sears and Justice Thompson join in this dissent.

DECIDED OCTOBER 16, 1995.

*Bauer & Deitch, George R. Ference,* for appellant.
*Sam G. Dickson,* for appellee.